THOMAS GARNER *v.* STATE OF MISSISSIPPI.

1. JURIES. *Relationship to party. Challenge after acceptance.*

A defendant in a murder case should, on seaosnable motion therefor, be permitted to withdraw his acceptance of a juror who had sworn on his *voir dire* that he was not related to the deceased, and to challenge him, if, after the acceptance and swearing of the jury, but before any evidence is introduced, it first becomes known to defendant and his counsel that a son of the juror married a niece of the husband of the deceased; the defendant being indicted for the murder of both husband and wife, but on trial only for the latter.

2. EVIDENCE. *Direct. Indirect.*

Whatever is improper to be proved directly cannot rightfully be proved by indirection.

FROM the circuit court of Pike county.

HON. WILLIAM P. CASSEDY, Judge.

The facts out of which the questions decided arose are stated in the opinion of the court.

*Will A. Parsons*, for appellant.

Upon no principle of justice or law can the course of the judge in forcing the defendant to go to trial for his life before a juror biased and prejudiced on account of relationship to the person whom the defendant was charged with murdering, forcing him to place the issue of his life or death in the hands

of such a jury, be justified. Such a course, such a ruling, is shocking to all proper ideas of justice and right. These rulings seem to have been made on the idea that swearing the jury was the thing behind which the court could not go. This court has repeatedly held otherwise, and in the case of *Jefferson* v. *State*, 52 Miss., 767, the jury had been impaneled and sworn and the indictment was being read, when one of the jurors arose and stated that he recollected that he was a member of the grand jury who found the bill. The court directed him to stand aside and substituted another in his place, and this court sustained the action·of the lower court. *McGuire's case*, 37 Miss., 369; *Smith's case*, 55 Miss., 519, and *Lewis' case*, 9 Smed. & M., 115.

Witness, Farnham, was allowed to testify that he first heard of the killing on Mr. Garner's gallery at a little after eleven o'clock on the day of the killing. That Mrs. Garner and Miss Garner were present at the time, and no one else was present. That when he got up to the house he found Mrs. Garner and Miss Garner crying on the gallery. All of this evidence was objected to by the defendant, objection overruled and exception reserved. What difference could it make legally where Henry Farnham was when he first heard of the killing? What difference could it make legally who was present when he first heard of it? What difference could it make legally that Mrs. Garner and Miss Garner, the defendant's wife and daughter, were the only ones present when Henry Farnham heard of the murder of Mr. and Mrs. Causey? What possible legal difference could it make in this case whether or not Mrs. Garner and Miss Garner were crying when Henry Farnham came up to the Garner house on that Sunday? All of this evidence was unquestionably incompetent, irrelevant and inadmissible, and yet I feel as sure as I do of anything that it was upon this testimony that the jury founded their verdict, and I do not believe, without it, they ever would have brought in that verdict.

*Mixon & Lotterhos*, on same side.

The court below permitted the state, over appellant's objec-

tion, to show by Farnham that he first heard of the killing at
Mr. Garner's shortly thereafter, at a time when no person was
present but himself and Mrs. and Miss Garner, and that he
found Mrs. and Miss Garner there crying.    Surely the issue in
this cause was not whether or not Mrs. Garner had said that
her husband had done the murder.    Appellant was not pre-
pared to meet every issue that might be raised upon what she
had said or done.    The extremely damaging effect of the testi-
mony is patent, after its admission to the salient features of
the *alibi* are thrown into obscurity, to the average juror.    The
sufficiency of this error, to require a reversal herein, we re-
spectfully submit, is clearly established by the exhaustive
and lucid opinion of this court, delivered in the case of
*Williams* v. *State*, 73 Miss., 820.    The only difference be-
tween the Williams case and the case at bar is that in the
case at bar the effect of the error is more damaging to the
defendant, and a part of the contradiction was arrived at indi-
rectly.

"A peremptory challenge interposed after the administration
of the oath to the jury comes too late."    12 Enc. Plead. & Prac.,
495, and the authorities cited in note 1.  The allowance of a
challenge after the juror has been sworn is not a strict matter
of right, but in the discretion of the court, and for good cause
shown such a challenge may be allowed either after or before
the completion of the panel.    12 Enc. Plead. & Prac, 496,
and notes 3 and 4 on said page and the next page.

In this trial for his life Garner should have had a jury com-
posed of those not of kin to the deceased.    Appellant submits
that he should have a new trial because of this failure to get a
jury such as contemplated by law.    He surely showed the
"good cause" mentioned by the authorities.

*Wiley N. Nash*, attorney-general, for the state.

The appellant was indicted for the murder of Maggie Causey;
was tried and convicted.    The proof shows that at the time

Mrs. Causey was killed, her husband was also killed, doubtless killed by the same party who murdered her.

As to the motion in regard to the juror, Boyd, it will be remembered that when these motions were made the entire jury had been selected, impaneled and sworn. Again, the juror, under the facts, was no kin. It cannot be claimed that appellant had a right to challenge Boyd, under the circumstances.

When a verdict in a case is manifestly correct the court will not disturb it. A new trial will not be granted upon the facts and circumstances of this case.

Argued orally by *Will. A. Parsons* and *F. H. Lotterhos*, for appellant, and by *Wiley N. Nash*, attorney-general, for appellee.

WOODS, C. J., delivered the opinion of the court.

Upon the impaneling of the jury, one Boyd was examined upon his *voir dire* touching his qualifications as a juror, and swore that he was not related by marriage or otherwise to the deceased or to the accused, and thereupon the said Boyd was accepted as a juror by the state and the defendant. After the panel had been completed and the jury specially sworn, and before any other step had been taken in the cause, the fact was ascertained by the defendant that a son of the said Boyd had married a niece of Scott Causey, the husband of Mrs. Maggie Causey, for the murder of both of whom the defendant had been indicted, and for the murder of the latter was then to be tried. The defendant then moved the court for leave to withdraw his acceptance of said Boyd as a juror and to challenge him for cause. The state formally admitted the facts set out in the motion, but the court overruled the motion. The defendant, having not exhausted his peremptory challenges, renewed his motion and prayed leave to challenge Boyd peremptorily, but this was by the court likewise denied, and this action of the court is assigned for error.

It is important to note in this connection that in impaneling the jury the court sustained two challenges for cause, made by the state, to two veniremen because of their relationship to the defendant. One of these veniremen testified that he was a fifth cousin of the accused, and the other testified that he had been informed by some person that day that he was a third cousin of the accused, but that he himself did not know whether he was any relation of the defendant. As the prime object in impaneling the jury, and especially in trials for capital offenses, is to secure a fair and impartial body to which the momentous issue is to be submitted on the facts, the scrupulous regard paid by the court to the right of the people to have a fair and wholly impartial jury, in sustaining the challenges of the state to the two veniremen indicated is not open to criticism; and if the challenge of the defendant to Boyd had been made when he was examined on his *voir dire*, we cannot doubt that the challenge would have been allowed. But, under the circumstances, the power of the court to allow the defendant's challenge to the accepted juror, Boyd, is clear, and should, we think, have been exercised as asked. The power existed in the court when the motion was made to set aside the defendant's acceptance of the juror and to allow the challenge, either for cause or peremptorily, following its former rulings on the state's challenges of the two other veniremen, who were related or supposed, in one instance, to be related to the accused, the defendant's motion should have been sustained and he permitted to challenge the obnoxious juror, who had been accepted in ignorance of his relationship to the deceased and her husband, and because he had answered that he was not related to them by marriage or otherwise. In the case of *Lewis* v. *State*, 9 Smed. & M., 115, it is said, with approval, that the rule is stated to be that an incompetent juror may be set aside at any time before evidence has been introduced, and in the case of *McGuire* v. *State*, 37 Miss., 369, the same rule is distinctly laid down in a case involving this identical question. While the suf-

ficiency of an objection to a juror is a matter resting for the most part in the sound discretion of the court, yet where there are reasonable grounds to suspect that the offered juror will act under some undue influence or prejudice, especially in capital cases, he should be excluded from the panel as incompetent. *McGuire* v. *State*, 37 Miss., 369.

Under all the circumstances adverted to by us, it appears to our mind that the defendant's motion should not have been denied, and that his challenge to the juror, Boyd, should have been allowed.

On the cross-examination by the state of the wife of the defendant, who was introduced on his behalf, she was asked if Henry Farnham came to her house on the morning in which the murder of Causey and his wife occurred, to which she answered, "Yes, sir, he came there about 11 o'clock." She was then asked if she and her daughter were not crying when Farnham came up, and if she did not then tell Farnham that her husband had been over there (at Causey's) and had killed Scott and Maggie Causey, and she denied the crying and denied the alleged conversation.

When Farnham was subsequently introduced as a witness for the state and was asked as to the crying of Mrs. Garner and her daughter, and as to the alleged conversation, which had been denied by Mrs. Garner on her cross-examination by the state, the first being withdrawn, he testified that Mrs. Garner and her daughter were on the gallery of the house, and crying, and that Mrs. Garner told him that her husband had gone over there (to Causey's) and had killed Scott and Maggie —Mr. and Mrs. Causey. This evidence the court refused to permit to go to the jury, and properly. Afterward, this witness was permitted to testify, over the objection of defendant, that he first heard of the murder about 11 o'clock, on the gallery of the house of the accused, and that Mrs. Garner, her daughter and himself were the only persons present. The inevitable effect of this evidence upon the jury was to satisfy its

members, if believed by it, that Mrs. Garner or her daughter told the witness that the defendant committed the murder, though there is no pretense even that either Mrs. Garner or her daughter witnessed the horrible crime, and that, by indirection, the court permitted that to be done which it had correctly held could not be done directly. That the evidence was incompetent is manifest.

Applying the infallible test laid down by this court, in the elaborate and exhaustive opinion delivered in the case of *Williams* v. *State*, 73 Miss., 820, the error in admitting this evidence of Farnham is palpable. "The test of whether a fact inquired of in cross examination is collateral is this: would the cross-examining party be entitled to prove it as a part of his case, tending to establish his plea?" Surely no one will contend that, if Mrs. Garner had been called as a witness for the state, the prosecuting attorney should have been allowed to ask her if she had not told Farnham that her husband had murdered the Causeys. It must be borne in mind, too, that no cautionary instruction touching this damaging evidence was given the jury, and they were thereby left free to regard it as criminating evidence against the accused. That its effect was immensely injurious to the defendant cannot be doubted. For the errors indicated, we feel bound to reverse the judgment.

*Reversed and remanded.*