BENJAMIN FRANKLIN DAVIS *v.* STATE OF MISSISSIPPI.

1. CRIMINAL LAW. *Murder. Evidence. Error in admitting. Exclusion. Curative effect.*

    The vital question in a prosecution for murder being whether defendant or deceased was the aggressor, and the evidence on the subject sharply conflicting, the error of admitting hearsay evidence to the effect that defendant had threatened deceased was not cured by its subsequent exclusion, with direction to the jury to disregard it.

2. SAME. *Witnesses. Impeachment. Collateral matters. Relevancy.*

    The defendant in a murder case and his wife having testified that she did not, after the killing, say to him in the presence of third persons, "If you had listened to me, you would not have gone down there and the man would not have been killed," it was error to allow the state to contradict them, since their testimony on the subject related to a collateral and irrelevant matter.

3. SAME. *Argument to jury. Reading parts of the testimony.*

    In a prosecution for crime the district attorney should not be permitted to read to the jury portions of the testimony as written out by the official stenographer.

FROM the circuit court of Attala county.

HON. WILLIAM J. LAMB, Special Judge.

Davis, the appellant, was indicted and tried for the murder of James Rickles, and was convicted of manslaughter, and appealed to the supreme court. The facts upon which the decision turned are sufficiently apparent from the opinion of the court.

[The original and main brief of appellant's counsel and the brief of counsel for appellee were withdrawn from the record, mislaid, or lost before the transcript came to the hands of the reporter. The reporter, however, found an additional, or sup-

plemental, brief for appellant, the synopsis of which is given below.]

*S. L. Dodd,* and *Teat & Teat,* for appellant.

It was fatal error in the court to permit the district attorney, in his final argument to the jury, to read to the jury the type-written notes prepared by the stenographer at his request, and to tell the jury that the same was the exact language and testimony of the witnesses, when in truth and in fact, as plainly shown by the record, he only read portions of their testimony to the jury, and not all of it.

Here was a great abuse of the province of the district attorney. He had no right to read the stenographer's notes to the jury, much less only broken sections and disconnected portions of the testimony, and then, over objection of appellant, to say to the jury that what he read was the precise testimony of the witnesses.

Again, there is nothing to show in the record that the written matter read to the jury had been properly authenticated by the stenographer, but only the declaration of the district attorney that he had caused the stenographer to write out the testimony of the witnesses in part. Here we have a record read to the jury, over the protest of the appellant, an incomplete document which did not purport to be official, read in the closing argument, without appellant's counsel being afforded a chance to read or have read to the jury any of the parts of the statements which were omitted by the district attorney.

Now the appellant distinctly assigned this as error in his motion for a new trial, and we insist it was highly prejudicial to the rights of the appellant, and a great abuse of power by the district attorney, and which was used, as the record shows, in a highly vehement and inflammatory way.

*William Williams,* attorney-general, for appellee.

TRULY, J., delivered the opinion of the court.

The action of the court in permitting Mrs. Rickles, the wife of the deceased, to testify that after the homicide she had heard one Richardson state that the defendant had made threats against the deceased, was palpable error. The trial judge evidently realized the error committed, for at a subsequent stage of the trial, of his own motion, he excluded from the jury the testimony in reference to the threats. But we cannot confidently affirm that this undid the evil effect of the erroneous admission of the evidence. With this plainly incompetent hearsay testimony stricken out, there was no evidence that appellant had made any threats against deceased. Richardson, the party whom Mrs. Rickles claimed to have heard make the statement in reference to threats by the appellant, was not introduced as a witness, so all the testimony bearing on threats rested solely on this confessedly erroneous ruling. Under the facts of this case it was vital to the appellant's defense not to have the jury improperly influenced in deciding the mental attitude occupied by himself and the deceased at the time of the homicide. The crucial question which the jury was called on to decide was: Who was the originator of and aggressor in the difficulty at the scene of the homicide which resulted in the death of Rickles? As tending to shed light on the pivotal point, any testimony of antecedent malice or previous preparation on the part of either of the combatants was important. The eyewitnesses were few, the conflict in their testimony sharp. In such a case the court erroneously threw, on the side of the state, the weight of this incompetent testimony of alleged threats. In a case so evenly balanced, this was sufficient to turn the scale against the accused.

The defense relied on by the appellant was that the deceased on the occasion of the homicide had armed himself for the purpose and with the deliberate intention of carrying into execution the threats which he had made to appellant's wife the day before; but the action of the court in admitting the testimony

referred to discredited this defense, and presented to the jury on behalf of the state a theory not supported by any legal testimony—that is, that the deceased was armed, not for the purpose of executing his own threats against the appellant, but in order to protect himself against threats made by the appellant. Viewed in this light, the case falls clearly within the condemnation of the rule announced in *Chism* v. *State,* 70 Miss., 742 (12 South. Rep., 852), and *Railroad Co.* v. *Ely,* 83 Miss., 519 (35 South. Rep., 873).

It was error to permit the district attorney to contradict and impeach the appellant and his wife upon a collateral matter, as was done by the testimony of the two Carter witnesses. The rule which forbids a witness to be impeached upon a collateral matter, and the sound and just reasons on which that rule is founded, have been so fully, frequently, and recently discussed and announced by this court that a statement of the fact is sufficient to demonstrate the error. Appellant and his wife, when testifying as witnesses, were asked, over objection, if on a certain occasion, in the presence of Mr. and Mrs. Carter, the wife had not said to her husband, "If you had listened to me, you would not have gone down there, and the man would not have been killed." Both denying this statement, the state was permitted to introduce the two Carters, who testified that such remark had been made by Mrs. Davis to her husband on the occasion stated. This testimony clearly fails to measure up to the test established in *Williams* v. *State,* 73 Miss., 820 (19 South. Rep., 826), and as subsequently approved and followed in every case bearing on this question since that time. See *Garner* v. *State,* 76 Miss., 515 (25 South. Rep., 363); *Dunk* v. *State,* 84 Miss., 452 (s.c., 36 South. Rep., 609). The testimony was not only improperly admitted, but was of itself incompetent and irrelevant. It tended in no way to throw light upon the homicide. The defendant might have admitted that his wife warned him not to go where Rickles was, because of her solicitude for his safety and her fear that Rickles might execute the threats

against the life of her husband, which, coupled with abuse of herself, he had uttered only the day before. But, introduced for the express purpose of impeaching appellant and his wife as proof of contradictory statements, this testimony, with the sanction and approval of the court, went to the jury as tending to show that the statements of appellant and his wife were false and fabricated, and conveying the implication that in truth the appellant had gone to the scene of the homicide with a deadly intent, with the full knowledge, but over the protest and against the admonition, of his wife. Nor was this testimony admissible upon the idea that it was a statement made in the hearing of the defendant against his interest, and not denied by him. It is not a statement against his interest. It accused him of nothing, and made no charge requiring denial or contradiction. As well said in the Garner case, *supra,* had the wife been placed upon the stand as a witness, she would not have been permitted, as direct testimony, to have testified that she had made such statement, and therefore the state was improperly permitted to thrust into the minds of the jury by indirect methods what it was forbidden to introduce directly.

We advert to, for the purpose of discountenancing, the practice of allowing the district attorney to have the testimony of a witness or witnesses, or such portion thereof as he may desire, written out by the official stenographer, and then reading the portion so selected by him to the jury as a part of his closing argument. Counsel for the state or for the defendant are, of course, permitted to take notes of testimony as voluminous as they may wish, and refer to the same in the course of argument. But in the case at bar the testimony of certain witnesses as detailed upon the stand, with all the force and effect of absolute accuracy and verity which is implied by the certificates of the court stenographer, were rehearsed to the jury, not as the remembrance of the attorney of what the witnesses had stated, but as an exact and official repetition of the very language. The effect of this was that, after the witnesses had all testified,

after the arguments for the defendant were all concluded, the minds of the jurors were again impressed by a rehearsal of such parts of the testimony of such witnesses as the district attorney thought would best serve the purpose of his closing argument for the prosecution. This, in our judgment, is not just to counsel for defendant, who have opportunity neither for denial, explanation, nor reply, and places an undue burden upon the cause of the defense. ·We do not decide that this alone, in the case at bar, would constitute reversible error, but, as the case must be reversed for reasons already indicated, we refer to this, so that it may be avoided upon another trial. The cause of justice does not require any addition to the already great advantage given the state by the closing speech, especially when the same is delivered by a prosecutor so eminently eloquent, vigorous, and forceful as the one who guarded the interests of the state in the case at bar.

*Reversed and remanded.*