WARE v. STATE.

(Division B.   Dec. 6, 1926.)

[110 So. 503.   No. 26144.]

1. CRIMINAL LAW. *Permitting impeaching testimony of important defense witness on immaterial matter held reversible error.*

   Where testimony of defendant's witness was of the gravest importance, permitting impeaching testimony on collateral and immaterial issue constituted reversible error.

2. WITNESSES. *Whether matter is collateral, so as to forbid impeachment of witness thereon, depends on whether cross-examining party would be allowed to prove it.*

   The test as to whether a matter is collateral, within meaning of rule forbidding impeachment of witness therefor, is whether

cross-examining party would be allowed to prove it as part of, or in support of, his case.

---

*Corpus Juris-Cyc. References: Criminal Law, 17CJ, p. 319, n. 22; p. 320, n. 31, 34; Witnesses, 40Cyc, p. 2699, n. 38; p. 2701, n. 39.

APPEAL from circuit court of Rankin county.
HON. G. E. WILSON, Judge.

Gustean Ware was convicted of murder, and she appeals. Reversed and remanded.

*Richardson & Pierce,* for appellant.

The court erred in admitting the testimony of R. E. Murray offered in rebuttal by the state over the objections of defendant wherein he contradicted witness Eastland on an immaterial matter.

*Rufus Creekmore,* Special Assistant Attorney-General, for the state.

Counsel argue that the court was in error in admitting the testimony of state witness R. E. Murray. On this point it is necessary only to state that the proper predicate was laid for the contradiction of the defense witnesses, Eastland and Walker, and the defendant herself.

As to the witness Eastland, on cross-examination by the state, he denied that he made the statement that he was confident that Gustean Ware did the killing and this rebuttal as to him was certainly proper, as proving contradictory statements made by him off the witness stand. His testimony with reference to the failure of the defense witness Walker to make a statement at the time of Gustean Ware's arrest with reference to Fat Sam saying he had blown the negro's brains out, was admissible for the same reason.

As to all of this rebuttal testimony, whether admissible or inadmissible, there is absolutely nothing to show that

the rights of defendant had been in any way prejudiced thereby.

The judgment should be affirmed.

Argued orally by. *Richardson & Pierce,* for appellant, and *Rufus Creekmore,* Special Assistant Attorney-General, for the state.

ANDERSON, J., delivered the opinion of the court.

Appellant, Gustean Ware, a negro woman, was indicted and convicted in the circuit court of Rankin county of the murder of John Henry Holyfield, a negro boy about eighteen years of age, and was sentenced to the penitentiary for life. From this judgment, she prosecutes this appeal.

The homicide took place at night on the back porch of a negro dance hall. One eyewitness, William Thomas, testified to what occurred between appellant and deceased at the time of the killing. His testimony, if true, proved that appellant was guilty of murder. There was other evidence, circumstantial in character, which tended to corroborate the testimony of the witness Thomas. This is true especially of the testimony of the witness Clarence Newell, who testified for the state. His testimony was, in substance, that immediately after the shooting appellant came into the dance hall and put a pistol in witness' pocket and said, "Take this gun;" that some one was shot out there, and requested that "you all ought to go out and see something about it." Appellant's defense was that she did not shoot the deceased; that she was not even present when he was shot and killed. John Eastland, testifying in behalf of appellant, stated that he was in the dance hall at the time of the shooting; that he heard the shots; that when the shots were fired she ran into the room; that she was just inside of the door when the last shot was fired; that appellant did not go to the state's witness Clarence Newell and put

anything in his pocket; in other words, that the facts and circumstances were such that appellant could not have fired the shots which killed the deceased. Appellant testified as a witness in her own behalf. She denied that she knew the deceased; that she had an altercation with him; that she was present when he was shot, or knew anything about who shot him.

It will be seen at once that the testimony of the witness John Eastland was very important to appellant. If true, it established that appellant could not have fired the shots which killed the deceased. On cross-examination of the witness Eastland, the district attorney asked the witness whether it was true or not that after the shooting he stated to R. E. Murray that he (the witness) was confident that appellant had shot and killed the deceased. The witness answered that it was not true— that he made no such statement. Over the objection of the appellant, the state was permitted to introduce R. E. Murray as a witness in rebuttal. He testified, over the appellant's objection, that after the shooting, in a conversation with the witness Eastland, the latter stated to him that he was confident appellant did the shooting.

Appellant contends that the admission of such testimony on behalf of the state was error; that the effect of it was to permit the state to contradict a most material witness for appellant on a wholly immaterial and collateral issue. It is true, beyond doubt, that the admission of the testimony in question was calculated to influence the jury against appellant. The vital question in the case was whether or not appellant did the shooting that caused the death of the deceased, or whether it was done by some one else. This is not a case where a party charged with murder admits the homicide and claims self-defense. The only question was whether or not appellant was the criminal agency through which the deceased lost his life. When the witness Murray gave his testimony in rebuttal, the evidence of the appellant's guilt and the evidence of her innocence was apparently about equal-

ly balanced. One eyewitness had testified for the state, whose testimony, if true, established the guilt of appellant. At least one witness had testified on behalf of appellant, whose testimony, if true, made it impossible for appellant to have fired the shot that killed the deceased. In addition, there was circumstantial evidence for and against appellant. In this state of case, it is evident the impeaching testimony of the witness Murray had a strong bearing with the jury against appellant.

The question is whether or not the impeaching testimony was with reference to a collateral and immaterial issue. The test as to whether a matter is collateral, within the meaning of the rule forbidding the impeachment of a witness on matters collateral to the issue involved, is this:

"Would the cross-examining party be allowed to prove it as a part, or in support, of his case? If not, then it is incompetent and irrelevant, for whatever is improper to be proved directly cannot rightfully be proved indirectly." *Bell* v. *State* (Miss.), 38 So. 795 (not officially reported); *Garman* v. *State*, 66 Miss. 196, 5 So. 385; *Williams* v. *State*, 73 Miss. 820, 19 So. 826; *Davis* v. *State*, 85 Miss. 416, 37 So. 1018; *Magness* v. *State*, 106 Miss. 195, 63 So. 352, Id., 103 Miss. 30, 60 So. 8.

In the *Magness case*, the principle was stated thus: "Would the cross-examining party be entitled to prove it as a part of his case?"

Certainly it is true that the state would not have been permitted to offer as original testimony the hearsay statement of the witness Eastland that he was confident appellant shot the deceased. It is furthermore true that the state could not, under the law, have proven that fact by Eastland himself. In other words, what Eastland thought as to who killed deceased was wholly immaterial. It could not have been proven by the state in making out its case, and therefore it could not be proven indirectly by impeaching a witness.

We do not hold that an error of this character would be a reversible error in any case, but we do hold that, in this case, the error was harmful. It struck at the very roots of appellant's defense. It tended to destroy the strongest corroborating evidence she had. For that error, and that alone, the judgment is reversed.

· We find no other harmful error committed by the court. We do not discuss any of the other assignments of error, because we do not think they are of sufficient weight and gravity to call for a discussion by the court.

*Reversed and remanded.*



1. HOMICIDE.   *Evidence held to sustain conviction for murder.*
   Evidence in murder prosecution *held* sufficient to sustain conviction.

2. HOMICIDE.   *Excluding threat by deceased, held harmless, in view of testimony showing other threats.*
   Refusal to admit testimony of details of threat by deceased against defendant, in connection with attempted assault on defendant's wife, made some three months before homicide, although error, *held* harmless, in view of fact that court admitted testimony showing three different threats subsequent to such time.

3. HOMICIDE.   *Defendant should be allowed to show what was said in connection with threat by deceased.*
   Defendant, in murder prosecution, should be allowed to show what was said in connection with threat made against him by deceased, in order to disclose significance and seriousness thereof, to be considered by jury in determining who was aggressor.

---

*Corpus Juris-Cyc. References: Criminal Law, 17CJ, p. 334, n. 96 New; p. 335, n. 13; Homicide, 30CJ, p. 155, n. 87; p. 310, n. 25.