WALKER *v.* STATE.*

(Division A.   Jan. 14, 1929.)

[119  So.  796.   No. 27402.]

*Corpus Juris-Cyc. References: Criminal Law, 17CJ, section 5662, p. 3119, n. 22; Witnesses, 40Cyc, p. 2610, n. 70, 71; p. 2770, n. 35; p. 2773, n. 39. Contradictory Statements as to collateral matters not grounds for impeachment of witness, see 28 R. C. L. 613; 4 R. C. L. Supp. 1831; 5 R. C. L. Supp. 1548; 6 R. C. L. Supp 1736.

*Fred B. Smith,* for appellant.

864

W. C. *Sweat* and J. A. *Lauderdale,* Assistant Attorney-General, for the state.

Argued orally by *Fred B. Smith,* for appellant, and *W. C. Sweat,* for the state.

Cook, J.  The appellant, Walter Walker, was indicted and tried in the circuit court of Tippah county for the murder of Ed Rainey, and was convicted of manslaughter and sentenced to the state penitentiary for a period of eight years, and from this conviction and sentence he prosecutes this appeal.

The facts, as testified to by the several witnesses for the state and the defendant, most of which are uncontradicted, are substantially as follows:

The defendant and the deceased were young white men who lived in the same community, and they were together for quite a while on the day of the homicide, and appeared to be on good terms.  Late in the afternoon they went to the home of a Mr. Yancy, and from there the appellant, his wife, and Miss Alta Yancy started to church services in the appellant's Ford roadster.  The appellant was driving, while his wife was seated next to him, and Miss Yancy was seated to her right and next to the right-hand door of the car.  As they were about to start, James Yancy, a brother of Alta Yancy, asked permission to accompany them, and climbed onto and stood on the left fender of the car; thereupon the deceased announced that he was going with them, and then climbed onto the right fender of the car.  The deceased had been drinking, and was very much under the influence of intoxicating liquor, and, as they proceeded along the road, he made very indecent remarks to the ladies in the car and improper demonstrations toward them, and otherwise engaged in boisterous and improper conduct.  The appellant remonstrated with the deceased,

but he continued this objectionable conduct until they had proceeded one hundred and fifty or two hundred yards beyond the home of one Deck Childs, and there his conduct became so objectionable that the appellant ordered him to get out of his car. The deceased told the appellant to stop the car and he would get off; and the car was then stopped at a point where there were high banks on each side of the road. The deceased then got out of the car and came around the front of it to the side where the appellant was still sitting with his hands on the steering wheel. As he came around the car, he drew and opened his pocketknife, and, when he reached the appellant he caught him by the arm and attempted to pull him out of the car, cursing and threatening to kill him. The appellant then got out of the car facing the deceased, and he (the deceased) struck him with the knife and cut him across the hand. The appellant then ran around the front of the car and back up the road toward the home of Deck Childs to a point where the bank on the side of the road was low, and there turned out into a cotton field, the deceased, with the open knife in his hand, being all the while in close pursuit of him. They made a circle in the cotton field and came back into the highway, and the appellant ran to his car and attempted to get into it, but the deceased was so close on him that he again ran around the car and out into the cotton field with the deceased in close pursuit. They made another circle around the field, and this time the appellant came back into the highway down the side of the bank at or near his automobile, stumbling and falling on the ground as he came down. Before he could get up, the deceased was on him and struck him in the side with the knife and kicked him. In the meantime, the occupants of the automobile had gotten out of it, and Miss Alta Yancy caught the deceased's arm and attempted to hold him. While they were struggling, the appellant started up the road toward the home of Deck Childs.

The deceased broke away from Miss Yancy and ran behind him about one-half the distance to the Childs' home, and then stopped and went back to the automobile. The appellant proceeded to the home of Deck Childs, and in a very short while was seen coming back toward the automobile with a gun in his hand. When the deceased saw the appellant approaching, he ran to meet him, still with the open knife in his hand, and threatened to kill him, and as he approached the appellant leveled the gun at him and ordered him to stop. The deceased replied: "Walter, damn you, you can't bluff me." Appellant then lowered the gun and turned out into the field, while the deceased again started toward him. At this time the appellant's wife, Alta Yancy, and James Yancy got back into the automobile and drove away. All of the above facts were testified to by the appellant, his wife, and Alta Yancy, and are uncontradicted.

The state offered the testimony of Mrs. Deck Childs and her son and daughter, who testified that the appellant appeared at their home and asked to borrow a gun to kill a snake; that they told him they had no shells, and he replied that he would take the gun and borrow the shells from Mark Waldron, who lived about a quarter of a mile beyond where his automobile was standing. Mrs. Childs gave him the gun, and he asked the little Childs boy to go with him and bring the gun back. About the time they got back to the highway, Mrs. Childs called to him to examine the gun to see whether it was loaded. The appellant then unbreached the gun and found that it contained a loaded shell. He then told the Childs boy to go back to the house as he was in trouble with a man and was going to shoot him. The boy returned to the house and reported to his mother what the appellant had said, and she asked the appellant to bring the gun back, but he proceeded down the road. About that time the deceased was coming toward the appellant, and, when they were nearly together, the appellant turned out into

the field and raised his gun and ordered him to stop, whereupon the deceased put his arms out in a horizontal position, and the appellant lowered the gun. The deceased again started toward the appellant, who again raised his gun and shot the deceased at a time when he had his arms extended in a horizontal position. The appellant then returned the gun to Mrs. Childs, and told her he had killed the deceased and asked her to call an officer. These state witnesses were about one hundred yards from the scene of the shooting, and were unable to say whether the deceased had anything in his hands at the time he was shot.

The appellant testified: That when the deceased had approached within about thirty feet of him, he raised the gun and told him that if he came any further he would shoot him. That the deceased, with his arms outstretched in a horizontal position and the knife still in his hand, with an oath, said: ''You know you can't bluff me.'' That he then lowered the gun, and the deceased lowered his arms to his side and again started toward him. That he again leveled the gun and ordered him to stop, and the deceased again stretched out his arms, and said: ''Shoot, you G— d— coward. When you bluff a Rainey you have done something.'' That he then lowered the gun and remonstrated with him. That the deceased replied with an oath and threatened to kill him, and again started toward him, and that when he did so, he fired the fatal shot.

When Miss Yancy, James Yancy, and the appellant's wife drove away from the scene of the killing, they went immediately to the home of Mark Waldron, about a quarter of a mile down the road. On the cross-examination of Alta Yancy, who was a very material witness for the defense, she was asked, over the objection of appellant, if she did not say to the people assembled at Mark Waldron's home, when she first arrived there: ''Go down to Deck Childs'—Walter Walker has gone to

get a gun to kill Ed Rainey.'' The witness denied making the statement, and thereupon the appellant moved to exclude the question and answer on the grounds, first, that the statement was not made in the presence of the appellant and was about an immaterial matter; and, second, that if it was offered as an attempt to lay a predicate for the contradiction of the witness, it was about a wholly immaterial matter, and therefore incompetent. This motion was overruled. On the cross-examination of appellant's wife, who was offered as a witness on behalf of the defense, over the objection of the appellant, she was asked whether the witness, Alta Yancy, made this statement, and she testified that the witness did not make the statement. In further cross-examination on this point, both witnesses, Alta Yancy and the appellant's wife, were repeatedly asked if their denials that this statement was made were as true as any other testimony given by them, and they answered that it was. In rebuttal, over the objection of the appellant, Mrs. Mark Waldron was permitted to testify that the witness, Alta Yancy, did make the statement in her presence when the party first drove up to her home.

The appellant assigns as error the action of the court in admitting this rebuttal testimony on the ground that it was a contradiction or impeachment of the witnesses about a wholly immaterial and collateral matter.

It is well settled in this state, as well as other jurisdictions, that it is not competent to contradict or impeach a witness about an immaterial or collateral matter. In the case of *Williams* v. *State,* 73 Miss. 820, 19 So. 826, many authorities on this point are collated and discussed, and the court there said:

"It is competent to discredit a witness by showing that he has 'made statements out of court contrary to what he has testified on the trial. But it is only in such matters as are relevant to the issue that the witness can be contradicted.' 1 Greenl. Ev. (15 Ed.), section 462.

It is true that, on cross-examination, great latitude is allowed, and that a witness may be asked by the cross-examining party as to collateral matters, as to which he could not be examined in chief, but the cross-examining party in such case is bound by the answers, and cannot contradict them.''

In the case of *Davis* v. *State,* 85 Miss. 416, 37 So. 1018, in discussing this rule, the court said:

''It was error to permit the district attorney to contradict and impeach the appellant and his wife upon a collateral matter, as was done by the testimony of the two Carter witnesses. The rule which forbids a witness to be impeached upon a collateral matter, and the sound and just reasons on which that rule is founded, have been so fully, frequently and recently discussed and announced by this court that a statement of the fact is sufficient to demonstrate the error.''

In announcing the same doctrine in the case of *Garman* v. *State,* 66 Miss. 196, 5 So. 385, the court used the following language:

''It was error to allow Lawrence Garman to be contradicted in rebuttal, as to a collateral and irrelevant matter. A witness cannot be cross-examined as to any fact which is collateral and irrelevant to the issue, merely for the purpose of contradicting him by other evidence. And if a question is put to a witness which is collateral and irrelevant to the issue, his answer cannot be contradicted by the party who asked the question; but it is conclusive against him.''

The same rule of evidence is announced and discussed in the cases of *Bell* v. *State* (Miss.), 38 So. 795; *Magness* v. *State,* 106 Miss. 195, 63 So. 352; *Garner* v. *State,* 76 Miss. 520, 25 So. 363; *Jeffries* v. *State,* 77 Miss. 760, 28 So. 948; *Ware* v. *State,* 145 Miss. 247, 110 So. 503; and in several of the cases cited above, there is laid down the test as to whether a matter is collateral or immaterial within the meaning of the rule forbidding the

contradiction or impeachment of a witness on matters collateral to the issue involved. In the case of *Garner* v. *State,* 76 Miss. 515, 521, 25 So. 363, 364, this test is stated in the following language:

"Applying the infallible test laid down by this court, in the elaborate and exhaustive opinion delivered in the case of *Williams* v. *State,* 73 Miss. 820 (19 So. 826), the error in admitting this evidence of Farnham is palpable. 'The test of whether a fact inquired of in cross-examination is collateral is this: Would the cross-examining party be entitled to prove it as a part of his case, tending to establish his plea?' "

In the discussing of this assignment of error, there remains then only the question of whether or not the contradiction of the witness, Alta Yancy, was about a collateral matter; and, if so, whether under the facts of this case it was prejudicial error. Certainly the state would not have been permitted to prove as a part of its case that the witness made the statement attributed to her. That the appellant had secured a gun at the home of Deck Childs and had started back to his car and to the scene of the difficulty was not disputed. In view of the occurrences just before he procured the gun, as testified to by the witnesses, that he intended to use the gun, if necessary, to protect himself from great bodily harm, was a reasonable and necessary inference or conclusion. The witness, Alta Yancy, had testified that the appellant went to the home of Deck Childs and procured a gun and was returning with it to the scene of the difficulty, and this rebuttal testimony, to the effect that she said: "Go down to Deck Childs'—Walter Walker has gone to get a gun to kill Ed Rainey," did not in any particular contradict her testimony as to the facts immediately preceding and leading up to the fatal shooting, and was, therefore, wholly immaterial. It served only to create a collateral issue as to whether or not the witness made the statement attributed to her. It shed no

light on any of the real issues involved and served to impeach the veracity of both the witness, Alta Yancy, and the wife of appellant, who had denied that the statement was made, about a matter that was wholly collateral and immaterial.

Having admitted this rebuttal testimony as being material, the court then instructed the jury, at the instance of the state, that if they believed from the evidence that any witness in the case had knowingly, willfully, and corruptly sworn falsely to any material fact pertaining to the real issue in the case, then they might altogether disregard the entire evidence of such witness. This contradiction by these witnesses was further emphasized by repeatedly asking the two witnesses whether their denials that such statement was made were as true as any other fact testified to by them; and, under the facts in this case, we think the admission of this rebuttal testimony was reversible error.

The next assignment of error argued by counsel is that the court erred in permitting the defendant, on cross-examination, to be asked as to details of offenses for which he had been formerly convicted, and the bringing before the jury the fact that he had been formerly convicted of assault and battery on Ed Rainey, the man whom he was charged with killing.

Section 1923, Code 1906 (section 1656, Hemingway's Code 1927), provides that "any witness may be examined touching his interest in the cause or his conviction of any crime, and his answers may be contradicted, and his interest or his conviction of a crime established by other evidence;" while section 1920, Code 1906 (section 1653, Hemingway's Code 1927), provides that a conviction of any witness for any offense, may be given in evidence to impeach his credibility. It is only by virtue of these two sections that a defendant may be examined in reference to prior convictions of crime, and such impeaching evidence should be restricted to the fact of convic-

tion. While section 1923, Code 1906 (section 1656, Hemingway's Code 1927), expressly provides that the answers of a witness who is being examined in reference to his conviction of crime may be contradicted and his conviction established by other evidence, this does not permit the details of the crime to be shown, and such examination should be held within the limits necessary to call attention to and identify the conviction being inquired about. In the case at bar, the appellant admitted that he had been convicted of five. or six misdemeanors, and identified two of them as the crimes of assault and battery. He was then cross-examined at length about other alleged convictions, and was asked if he had not been convicted of assault and battery on two named parties, one of whom was the deceased. Having admitted the conviction, it was error to pursue the inquiry further by showing the identity of the party upon whom the assault and battery was committed; but whether we would reverse for this error alone, it will now be unnecessary to decide in view of the fact that the cause must be reversed on another ground.

We do not think there was any reversible error in the granting of the instructions requested by the state, or in the refusal of instructions requested by the defendant. The appellant was granted a number of instructions which fully and accurately covered the law applicable to his defense. However, for the errors indicated above, the judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*