BERRY v. STATE.

Division A. Oct. 1, 1951.

No. 38028 (54 So. (2d) 222)

W. D. Conn, Jr., Jas. A. Blount, and J. J. Breland, for appellant.

166

**Joe T. Patterson,** Assistant Attorney General, for appellee.

**Holmes, C.**

The appellant was charged by indictment in the Circuit Court of the Second Judicial District of Tallahatchie County with the murder of Robert Diver, and, on a change of venue to the First Judicial District of Panola County, was tried, convicted, and sentenced to life imprisonment in the state penitentiary.

The events leading up to the actual killing are undisputed.

The homicide occurred on the morning of September 15, 1949, on the plantation of Homer Luckett, about a mile north of Tutwiler in Tallahatchie County. Mr. Luckett had contracted with appellant and his partner, W. G. (Fattie) Owens, to dust and defoliate his cotton by the use of chemicals sprayed from a plane, and they in turn had engaged Charlie Blackwell, a pilot who owned and operated planes for such purpose, to carry on the actual operations. On the morning of the difficulty, at about 6:15 or 7:00 o'clock, Blackwell landed his plane on the Luckett plantation. Luckett and some of his employees were there, including two or three Negroes, and the appellant and Owens were also there, having arrived in a car. Blackwell, with the help of two or three Negroes, began loading the plane with the chemicals and while this work was in progress, Diver, the deceased, flew in and landed in a cub plane which also belonged to Blackwell. It does not appear from the record that Diver was to have any part in the work to be done, nor does it appear why he came on the scene. The appellant introduced Diver to Luckett and others present and there was nothing to indicate that there was any feeling of ill will or unfriendliness between Diver and the appellant. The appellant was armed with a 38 revolver and had a bottle of whiskey, from which he took two or three drinks. After Blackwell had made one flight, it was determined by Luckett that the wind was unfavorable and was causing the spray of the chemicals

to shift and he suggested that the operation be discontinued until a more favorable wind. Luckett then sat down on the ground and began to pick in the earth with his knife. The appellant, Red Berry, and Owens and Diver also sat down, the appellant sitting to the left of Luckett and Diver sitting in front of Luckett and the appellant. The appellant took out his bottle of whiskey and passed it around and he and the others except Luckett took two or three drinks. Luckett inquired of appellant when he could come back and resume the work of dusting and defoliating his cotton and appellant replied that he was very busy and that it would probably be two or three days and that he would have to let him know later. From this point, there are two conflicting versions of the occurrences, one given for the state by Homer Luckett and the other given for the defense by the appellant himself.

Luckett and the appellant were the only eyewitnesses who testified.

Luckett gave his version of the shooting as follows:

"Q. Go ahead then. I believe you were fixing to testify about some question Red Berry wanted to ask Bob Diver? A. Red Berry said, he wanted to ask him one question and Bob told him to go ahead. And Red said to him 'What did you tell my wife over the telephone early this morning or yesterday morning'. He said, early this morning or yesterday morning, I forget which now. And Mr. Diver said to Red, 'Red, I don't even know your wife' and Red Berry said 'That is all right, you told her what she said you told her.'

"Q. Who said that? A. Red Berry said that to him.

"Q. Anything else said? A. Then Red Berry said 'Well, you told her that I wasn't even at the airport.' Bob Diver said 'That is a God damn lie' and Red said 'You call my wife a God damn lie' and both of them jumped up, like that.

"Q. What position were they in while that conversation was going on? A. The position they sat down in.

Red to the left and I do not know whether Owens was there or not. I wasn't looking at him. Bob was in front of me and Red over here.

"Q. How did they jump up, at different times or not? A. Almost together.

"Q. Did you see Bob Diver when he jumped up? A. No, sir, I wasn't looking. I was, this way, digging in the ground.

"Q. What was the thing that attracted your attention and made you look up? A. They jumped up. I heard the shuffling and I looked up. As I looked up, I saw the gun pointed into his chest—that close (indicating) a foot and a half.

"Q. Who had the gun? A. Red Berry.

"Q. Where did he have it pointed? A. At Bob Diver.

"Q. How far was Bob Diver standing from him? A. They were standing in a crouched position, like that. Red was close enough that the gun went the extent of his arm. The gun was within twelve or fifteen or eighteen inches of his chest.

"Q. What then was said by Bob Diver or Red Berry? A. As I looked up, the gun went off.

"Q. Was anything said by anybody? A. Nothing was said.

"Q. What did Bob Diver have in his hand, if anything, at that time? A. Not anything."

The bullet struck Diver about the right nipple and had its exit in his back and he died shortly thereafter in the doctor's office. Luckett further testified that as he looked up he could not see Diver's right hand but that when the shot was fired Diver put both of his hands to his chest and that he had nothing in his hands and that he exclaimed "O, Red, you hurt me", and that Red replied, "I should have killed you", and immediately fired his pistol a second time, firing in the direction of the plane. No weapon of any kind was found on Diver or on the ground at the scene of the shooting. On the following day in the jail at Sumner, appellant was asked why he

shot Diver and he stated in the presence of the county attorney and other officers that he did not know.

Appellant's version of the shooting, as given by him in his testimony, was as follows:

"Q. What was it you asked Diver? A. I asked Diver what did he tell my wife that morning.

"Q. What did he say? A. He said 'I didn't tell your wife nothing' and I said to him 'you told my wife I didn't operate off of Fletcher Field' and he said 'I didn't tell your wife that.' And I said 'she told me you did' and then he said 'that is a God damn lie.' I said 'you mean to call my wife a God damn lie?' He raised up and kicked me in the leg and knocked me off balance—we were going to have a fight. He jumped up and when he does I hit at him on the left shoulder and he ran his hand in his pocket and I got my pistol and I shot.

"Q. How many times did you shoot? A. I shot him once right quick, right at the beginning. I shot him with my left hand and jumped back and put my pistol in my right hand and he came out with his hand— I said 'come out of your pocket, you son of ———. Come out of your pocket'. When he did I shot over there in the ground.

"Q. Why did you shoot that man? A. When he ran his hand in his pocket, coming this way, I shot in self defense. What he had in his pocket I don't know. Later on I was sorry he didn't have.

"Q. When he pulled his hand out of his pocket you saw there wasn't anything in it? A. And I shot in the ground. He said 'you have killed me' and I told him 'No, I haven't. I could have killed you.' "

Appellant testified on cross-examination that Diver was "going towards his pocket" and that it was not until he made this movement that he drew his gun and fired.

At the conclusion of all of the testimony, the appellant requested and was refused the following instruction to the jury: "The court instructs you that you

can not find the defendant guilty of murder." Appellant now assigns as error the refusal of this instruction. We find no merit in this assignment. Under the instructions granted to the state, the jury might have found the appellant guilty of either murder or manslaughter and either verdict would, in our opinion, have been warranted under the evidence. The testimony was conflicting and clearly presented an issue for the determination of the jury on the question of appellant's guilt of either murder or manslaughter.

It is also assigned as error that the district attorney, over the objection of appellant, was permitted to develop on cross-examination of the appellant the details of alleged previous convictions. The appellant on cross-examination was asked by the district attorney how many times he had been convicted of carrying a pistol, how many times he had been convicted of fighting, how many times for public drunkenness, how many times for gambling and disorderly conduct, and how many times for felonious assault. These questions were all objectionable as to form in that they assumed as a fact the appellant's conviction of the several offenses without proof having been made thereof. No objection appears to have been made to these questions however, until after the inquiry as to how many times appellant had been convicted of assault, and the objection then made does not appear to have been ruled on by the court. When appellant was asked how many times he had been convicted of felonious assault, he inquired what that meant and was informed by the court that the question was whether or not he had been convicted of assault and battery with intent to kill and murder. He first answered that he did not know and then stated that he had been convicted at Sumner once. This answered the question in the affirmative and should have ended the inquiry. If he had answered the question in the negative, then it would have been permissible for the state to contradict him by showing the record of his former conviction, if such there

was, and thus assailing his credibility. The district attorney, however, pursued the inquiry further and asked what he had been convicted of at Sumner. He answered for fighting and then was asked what particular conviction that was. He said that he couldn't tell to save his life. The district attorney then inquired if he had not been convicted of assault on Mr. Weiner with a pistol. Objection to this question was made and was overruled by the court and the district attorney again inquired if he had not been convicted of assault on Abe Weiner in Tutwiler with a pistol, and the appellant answered whatever it was he was convicted of, he paid a fine for it.

■■ Appellant had previously stated in response to the inquiry as to whether or not he had ever been convicted of assault and battery with intent to kill and murder that he had been convicted once at Sumner. Having thus admitted the conviction, it was error to permit the district attorney to pursue the inquiry further by showing the identity of the party upon whom the assault was committed and by showing the kind of weapon used. Walker v. State, 151 Miss. 862, 119 So. 796. ■■ It is only by virtue of the statute, Sec. 1693 of the Miss. Code of 1942, that appellant's conviction of former offenses could be inquired into on his cross-examination, and the statute must be strictly construed in favor of a defendant. If he denies his former conviction he may be contradicted by the record of such conviction and such evidence goes only to the credibility of the witnesses. Dodds v. State, Miss., 45 So. 863. We do not decide, however, and it is unnecessary for us to decide, in view of our conclusions announced herein, whether or not this error, standing alone, constitutes reversible error.

■■ By a further assignment of error, the appellant contends that the prosecuting attorney was permitted, over the objection of appellant, to argue to the jury prejudicial facts not in evidence. The prosecuting attorney, in his argument to the jury, stated that the appel-

lant had testified that he knew the person who had been intercepting telephone calls made to him at the airport and that he had made the threat that he was going to get him. Objection was duly made to this argument and the court admonished counsel not to go out of the record and stated that the jury had heard the testimony and that they were familiar with the testimony and that they would know whether or not counsel was in the record. Following this action of the court, a motion for a mistrial was made by appellant and overruled by the court. The state had previously undertaken to prove by the witness Leon Hardy that about a week or ten days before the killing the appellant had stated at the airport in Clarksdale that he knew who was intercepting his telephone calls and that he was going to get him and that at the time he made this statement he exhibited a revolver. The court very properly sustained the objection to this testimony and it was not permitted to go before the jury. Later, on cross-examination of appellant, the appellant was asked as to this statement and denied it. Therefore, there was no evidence before the jury that such statement or threat had been made and certainly the appellant had not so testified as stated by the prosecuting attorney to the jury. This Court, in the case of Nelms & Blum Co. v. Fink, 159 Miss. 372, 131 So. 817, 820, defined improper argument as "abuse, unjustified denunciation, or a statement of fact not shown in evidence." When objection was made to the argument, the trial court merely admonished counsel to stay in the record and left it to the jury to say whether or not such evidence was before the jury. In Brush v. Laurendine, 168 Miss. 7, 150 So. 818, it was stated as a general rule in cases of improper argument that the judge must admonish the jury directly so that the jury may not escape the understanding that the judge is addressing himself to them. We think that the statement of the prosecuting attorney to the jury was prejudicial in that the jury might have construed the testimony attributed to the

appellent as a threat against the deceased and such argument of counsel was therefore calculated to have a harmful influence on the jury. We are of the opinion that under the circumstances disclosed by this record it was error for the judge to fail to instruct the jury directly that the facts stated by the prosecuting attorney were not in evidence and that his statement should be disregarded.

The mere admonition of counsel and a statement of the trial judge that the jury would know whether or not such facts were in evidence were not sufficient to cure the harmful effects of the argument. The jury might very well have inferred that the judge himself was in doubt as to whether such evidence was before the jury and was leaving it to the jury to so determine. We likewise, however, do not decide and it is unnecessary for us to decide, in view of our ultimate conclusions herein, whether or not this error, if it stood alone, would constitute reversible error. It and the other error herein above pointed out become of more serious import when considered in connection with the next assignment discussed.

■■■ The appellant next complains and assigns as error that the court erred in permitting the state to show a conversation between the appellant and Dave Jennings, a deputy sheriff, with reference to the pistol used in the homicide and its use in killing other persons. The state undertook to prove by Dave Jennings, a deputy sheriff, who carried the appellant in his car from Tutwiler to Sumner for the purpose of lodging him in jail, that he, Jennings, had the appellant's pistol on the seat of the car between his legs and that the appellant asked Jennings if that was his, appellant's pistol, and upon being informed that it was, stated that it had two notches on it and that if the deceased died, it would be the third or fourth man that pistol had killed. Objection was made to this testimony and was sustained by the court. Nevertheless, the district attorney thereafter on cross-

examination of the appellant, over the appellant's objection, developed substantially the same testimony. This testimony was entirely incompetent and irrelevant. It was no proof that the appellant had used the same pistol in killing two men previously, nor was it proof that the prior killings were not justified, nor did it shed any light on the guilt or innocence of the appellant on the charge for which he was being tried. The appellant objected to this testimony and moved for a mistrial and his objection and motion were overruled. We think it was prejudicial error for the trial court to permit this evidence to go before the jury. The plain inference which the jury were permitted to draw from it, and which they no doubt did draw from it, was that the appellant was a three-time killer, who cheaply regarded human life, and who boldly and callously boasted of his exploits with his revolver. The evidence was so inflammatory and so highly prejudicial that we are unable to say that the verdict of the jury was not affected by it. The prejudicial effect of it was greatly enhanced by the error of the court in permitting the district attorney to transcend the limit of proper inquiry into former convictions of the appellant, and further enhanced by the error of the court in failing to directly instruct the jury that the testimony related to the jury by the prosecuting attorney in his argument and objected to by the appellant was not before the jury and should be disregarded. The cumulative effect of these errors was so calculated to influence the jury to the prejudice of the appellant that we are unable to say that the verdict of the jury was not thereby influenced.

 It is the proud boast of our system of jurisprudence that every man charged with crime is entitled to a fair trial at the hands of an impartial jury. This means a trial according to law on competent and relevant evidence, and by a jury untouched by the poisonous fangs of prejudice. We are not convinced that the appellant had such a trial. Hence the judgment of con-

viction is reversed and the cause remanded for another trial.

Reversed and remanded.

PER CURIAM.

The above opinion is adopted as the opinion of the Court, and for the reasons therein indicated, the judgment of the court below is reversed and remanded.