348 So.2d 765 (1977)
Teresa CARLISLE
v.
STATE of Mississippi.
No. 49699.
Supreme Court of Mississippi.
July 27, 1977.
Johnston, Wright & Steinberger, Fielding L. Wright, Jr., Pascagoula, for appellant.
A.F. Summer, Atty. Gen., by John C. Ellis, Sp. Asst. Atty. Gen. and Karen Gilfoy, Asst. Atty. Gen., Jackson, for appellee.
Before PATTERSON, P.J., SUGG and WALKER, JJ., and BIGGERS, Commissioner.
NEAL B. BIGGERS, Commissioner for the Court:[1]
Teresa Carlisle was convicted in the Circuit Court of Jackson County of the murder of her estranged husband, Thomas "Tom Boy" Carlisle, and sentenced to life imprisonment. It is undisputed that on September 27, 1975, the defendant shot and killed the deceased while he was sitting in an automobile with Jo Ann Gibson at a gas station belonging to defendant's father. Excluding the deceased, there were three eye-witnesses to the shooting  defendant, defendant's father, William Gordon, and Jo Ann Gibson. All three testified at the trial. The primary issue of fact was whether the defendant shot in reasonable self-defense. Both the State and the defendant introduced testimony of previous threats having been made against each other by the defendant and the deceased. With that background, Jo Ann Gibson testified that while she and the deceased were sitting in the car at the gas station, the defendant walked up to the car, opened the door and stated, "Tom Boy, I ought to kill you,", then pulled out a pistol and stated further, "I think I will." She then shot the deceased at least *766 two times. The witness further testified that all the time the defendant was present at the car, prior to and during the shooting, the deceased said nothing and his hands remained motionless on the steering wheel.
In contradiction to the testimony of Miss Gibson, the defendant and her father testified that the defendant went to the car to ask the deceased for a quiet divorce and a stop to their quarreling, and that the deceased replied, "A dead woman don't need a divorce," whereupon, he reached toward the back seat where testimony showed he usually kept an over and under shotgun and rifle. The testimony of the defendant and her father was that when the deceased reached over into the back seat, the defendant then pulled out a pistol and shot the deceased out of fear that he was about to shoot her.
Up until that point in the trial the issue of whether the shooting was done in necessary and reasonable self-defense, and the question of the credibility of the witnesses was clearly in issue and for the jury to determine. Then, upon cross-examination of the defendant's father, Mr. Gordon, the district attorney asked him the general question of whether or not he had told the two assistant district attorneys that he had reason to know that the defendant had planned to kill the deceased. Of course, in laying the predicate to introduce prior inconsistent statements of a witness, the questions should include whether or not on a specific date, at a specific place, and in the presence of specific persons, the witness made a particular statement. Bonelli et al. v. Bowen, 70 Miss. 142, 11 So. 791 (1892). Then with the predicate properly laid, the witness may be impeached by showing prior statements inconsistent with the in-court testimony, so long as the statement made in court is one relevant to the issue in the case and therefore not collateral. Williams v. State, 73 Miss. 820, 19 So. 826 affirmed 120 U.S. 213, 18 S.Ct. 583, 42 L.Ed. 1012 (1896).
The pertinent parts of the cross-examination and answers of Mr. Gordon are as follows:
Q. Well, to be more specific, I've got two assistant district attorneys, Mr. Colingo and Mr. Lachaussee. Did you ever tell them that you had reason to know that Teresa had reason to kill him? To kill Tom Boy?
A. Well, sir, a witness came to us and told us that they had overheard her, and she had called him and told him that.
Q. And I understand ... you said a witness ... somebody told you that Teresa had planned to kill him. Is that what you are saying?
A. Yes, sir.
Q. That would be the grounds that you told them that you knew she planned to kill him?
A. That's right.
With that predicate and subject matter, the State called Mr. Colingo, the assistant district attorney, on rebuttal. Mr. Colingo testified on voir dire outside the presence of the jury, that on the previous afternoon Mr. Gordon had stopped Mr. Colingo in the hall of the courthouse and told him that he knew Teresa had planned on killing Tom-Boy. On cross-examination of Mr. Colingo, still on voir dire, Mr. Colingo testified he asked Mr. Gordon several times if he had "personal knowledge" of this plan by the defendant, and the father answered in the affirmative; however, Mr. Colingo on further cross-examination said he did not know on what the witness based his "personal knowledge" and neither Mr. Colingo nor the other prosecutors went into it with the witness. It was obvious to the prosecutors after hearing the aforestated cross-examination of Mr. Gordon, the defendant's father, that he based his knowledge of the defendant's plan not on anything the defendant had said, but on something someone else had told Mr. Gordon the defendant said. This type of rebuttal testimony has been held improper and reversible error in a long line of cases beginning with Williams v. State, supra. The rule laid down in Williams has consistently been followed in this jurisdiction. Kelly v. State, Miss., 278 So.2d 400 (1973); Price v. Simpson, Miss., 205 So.2d 642 (1968); Holden v. State, 226 *767 Miss. 726, 85 So.2d 208 (1956); Cofer v. State, 158 Miss. 493, 130 So. 511 (1930); Ware v. State, 145 Miss. 247, 110 So. 503 (1926); Dunk v. State, 84 Miss. 452, 36 So. 609 (1904); Jeffries v. State, 77 Miss. 757, 28 So. 948 (1900); and Garner v. State, 76 Miss. 515, 25 So. 363 (1899). In the Williams case the facts were very similar to the case under consideration here. An eye-witness to the shooting testified for the defendant. On cross-examination, she was asked by the State whether or not she said at the scene of the shooting that "they made up a plot to kill him three weeks ago." She denied making the statement and the State called in rebuttal a witness who testified she did make such a statement at the scene. In reversing the conviction because of this rebuttal testimony, this Court then said:
"The test as to whether a matter is collateral within the meaning of the rule, is this: That the cross-examining party be allowed to prove it in support of his case" ... "It must be remembered, also, that this test applies to the subject-matter of the inquiry, and not to the admissibility of the evidence offered in proof of it" ... Applying it here, we think it is clear that it was error to permit the witness, Jeems, to testify to the alleged contradictory statement made out of court ... The exact test here is, what was the fact embodied in her unsworn statement? This, that she had sent Elsie Ross word that there was a plot, etc.; had said to her that there was a plot, etc. Was this fact  her mere statement to Elsie that there was a plot, etc.  a substantive fact relevant to the guilt or innocence of this defendant, which the state could have proved as a part of its case in chief? Most certainly not. It is, in effect, but hearsay, and should have not been allowed to be contradicted. Whether she made such statement or not is a matter clearly irrelevant and collateral within the test we have laid down, and hence she could not be contradicted as to it. (73 Miss. at 829-30, 19 So. at 829).
Since the term "personal knowledge" does not normally have the same connotation to a layman as it has to one skilled in the rules of evidence, and in view of the fact that no one in the prosecutor's office saw fit to inquire of Mr. Gordon on what his "personal knowledge" was based, it was, therefore, evident after answering the district attorney's questions on cross-examination that Mr. Gordon had only hearsay knowledge of any plan on the part of the defendant. Therefore, as in the Williams case, supra, the rebuttal testimony was improper and should not have been allowed, and the verdict must, as a result, be reversed.
The State has cited the case of Breakfield v. State, 275 So.2d 860 (Miss. 1973), as authority that in some cases even when improper rebuttal testimony is given, it does not demand reversal if surrebuttal is offered, as it was here; however, in view of the obvious hearsay basis of any knowledge by Mr. Gordon of a plan by the defendant, especially after the extensive voir dire of Mr. Colingo before he was allowed to testify in the presence of the jury, the Court is of the opinion that Breakfield is inapplicable here, and the case should be remanded for another trial.
The remaining assignments of error are considered without merit and will not be discussed here.
REVERSED AND REMANDED.
PATTERSON and INZER, P. JJ., and SMITH, ROBERTSON, SUGG, WALKER, BROOM and LEE, JJ., concur.
GILLESPIE, C.J., took no part.
NOTES
[1] pursuant to Chapter 430, Laws of 1976. The above opinion is adopted as the opinion of the Court.