EMILE BONELLI ET AL. v. G. A. BOWEN.

1. EVIDENCE. *Impeachment of witness. Certainty. Practice.*
  In laying the predicate for the impeachment of a witness, he should be apprised of the time, place and persons present when the supposed conversation took place; and, on the examination of the impeaching witness, he should be confined to the inquiries propounded in the predicate, and should not be asked or permitted to state generally what took place on the occasion inquired about.

2. DECLARATION. *Damages. Matters in aggravation.*
  Where, in an action for damages, the declaration alleged that defendants,

in an attempt to collect a debt, forcibly, and against her remonstrance, entered plaintiff's house while she was disrobed, and seized a certain check and demanded of her to indorse it, and took it away, to the damage of plaintiff, etc., the gravamen of the action is the taking of the check, and the other matters are merely in aggravation of damages.

3. MATTERS IN AGGRAVATION.    *Violation of law.    Burden of proof.*

Although such acts relied on in aggravation of damages amount to violations of criminal law, the defendants are not entitled, in such action, to presumption of innocence; nor is the burden on plaintiff to prove them beyond reasonable doubt, but only to establish the substantial matters, by a preponderance of evidence, to the satisfaction of the jury.

4. DAMAGES.    *Mental suffering.    Compensation.    Punitive damages.*

In such case, mental suffering of the plaintiff is an element of compensatory damages, and it is proper to instruct that the jury may, in estimating damages, consider plaintiff's mental anguish and suffering, if any, and, in addition, may, if deemed proper, award punitive damages.

FROM the circuit court of Warren county.

HON. J. D. GILLAND, Judge.

Action by appellee, Mrs. G. A. Bowen, against E. Bonelli, B. C. Bonelli and Frank Bonelli. The amended declaration, which contains two slightly varying counts, alleges in the first count as follows : That defendants, on September 26, 1891, with force and arms broke and entered the dwelling-house of the plaintiff in the night-time, when plaintiff had disrobed, and was preparing to retire, and greatly disturbed her in the quiet possession of her dwelling-house, and forcibly, rudely, angrily and in a threatening manner, against the remonstrance of plaintiff, entered her room, and, without process of law, searched her room, and seized and took violently and forcibly a certain draft given by one Jake Dornbush, on The Delta Trust and Banking Company, for $75, and forcibly, rudely and angrily insisted upon her indorsing the draft, and when she refused, wrote her name across the back of it, and took the same away; and then and there greatly soiled, damaged and spoiled her household goods and furniture, and upset the room and furniture, and put plaint-

iff in great terror and fear of her life and safety, to her great damage, $20,000, etc.

The second count differs from the first only in alleging that the defendants, in committing the wrongs, were intending and contriving to collect a debt due them by plaintiff's husband, and in omitting any mention of damage to household goods and furniture.

The cause proceeded to trial upon defendants' plea of not guilty.

It is not deemed necessary to set out the evidence in full. That of the plaintiff supported, or tended to support, her declaration, while that of defendants contradicted her in every material matter, and was to the effect that they entered plaintiff's house through the open door with her consent, and that she delivered the draft to them in part payment of a debt due them by her husband.

Nels Anderson and John Tipton were examined as witnesses for the defendants, and their testimony was mainly corroborative of that of the defendants. Anderson was questioned, on cross-examination, as follows :

*Ques.* " Do you recollect having had a conversation with Mr. McLaurin here ? "

*Ans.* " Yes, sir."

*Ques.* " Didn't you have a conversation with him here this morning ? "

*Ans.* " Yes, sir."

*Ques.* " Didn't you state to him that you didn't know whether Mrs. Bowen signed the check or not ? "

*Ans.* " I say that now. I don't know positive whether she signed it. No, sir; I didn't say that."

*Ques.* " Didn't she ask you to go right away, and stop payment of the check, saying she had been robbed ? "

*Ans.* " No, sir."

*Ques.* " Didn't you state that to Mr. McLaurin in the courtroom ? "

*Ans.* " No, sir."

*Ques.* " You know Mr. McLaurin?"

*Ans.* " Yes, sir."

*Ques.* " Didn't you tell him that this morning here?"

*Ans.* " No, sir; I never told Mr. McLaurin that she said she had been robbed."

*Ques.* " In that conversation with Mr. McLaurin here this morning, did you state that she came to the door crying, after the Bonellis had left, stating that she had been robbed, and asking you to have Mr. Dornbush stop payment of the check?"

*Ans.* " No, sir.    I told her that myself."

John Tipton was asked the following questions on cross-examination:

*Ques.* " Do you recollect Mr. Dornbush coming down here last Monday, and having a conversation with Ben Holland, Amos Holland and yourself?"

*Ans.* " Yes, sir."

*Ques.* " Do you recollect, in that conversation there, hearing it stated, and you assented to it, that Ben Holland peeped through the crack and saw Mrs. Bowen holding on to the check, and refusing to give it up, crying and saying it was her own, and she could not part with her property that way?"

*Ans.* " No, sir."

This witness was also asked by Mr. W. K. McLaurin, one of the attorneys for the plaintiff, if he did not recollect when Ben Holland and himself had talked with witness about the case.    To which the witness replied affirmatively, and was then asked if he did not say "it was an outrage, and Mrs. Bowen ought to get big damages for it."    Witness denied having made this statement.

Thereupon, Jacob Dornbush was examined in rebuttal for plaintiff, and testified that he recollected a conversation with Ben Holland, Amos Holland and Tipton on the preceding Monday, in which Ben Holland made a statement, to which Tipton assented, the substance of which was that when the Bonellis went into Mrs. Bowen's house, they asked her for

the check; that she held it in her hand by one corner, and that one of the defendants had hold of it, and wanted her to sign it; that said witness, in that conversation, stated they had seen enough to win the case; that they further stated that Mrs. Bowen was in her night-clothes, and asked the Bonellis not to come in, and that they did not see her indorse the check, but saw defendants take the check, and refuse to surrender it. A motion to exclude this testimony was overruled.

W. K. McLaurin was also examined in rebuttal, and testified, over the objections of defendants, that he had that morning had a conversation in the court-room with Anderson, who had been subpœnaed for plaintiff. McLaurin was asked to state what took place, and replied: "He [Anderson] told me when they went in that he didn't know whether Mrs. Bowen signed the check or not, and that immediately after the Bonellis left, she came to the door crying, and, saying she had been robbed, asked him to go to Mr. Dornbush and have him stop payment of the check."

Witness further testified: "I had a conversation with Tipton one day last week about this case. I was down on Washington street, where this thing occurred. Ben Holland walked up to me and mentioned the case, and, in the presence of Tipton and myself, said 'it was a damned outrage.' Tipton heard it, and assented to it, and said it was right. Ben at first told me that occurred in Tipton's presence, and he repeated what he first said, and Tipton assented to it, and said 'our testimony will win the case.'"

By the instructions given for the plaintiff, the jury was told that, if it found for the plaintiff, it could take into consideration the mental anguish and suffering of the plaintiff, if any, in estimating her compensatory damages, and, in addition, might, if it deemed proper, award vindictive or punitive damages.

The following instruction, asked by the defendants, was refused:

6. "The allegations in the declaration charge indictable felonies, and must be proven to a moral certainty, and to the exclusion of every reasonable doubt arising out of all the evidence in the case. A bare preponderance of evidence is not sufficient."

The eighth, ninth and tenth instructions for defendants, refused by the court, were to the effect that the jury could consider as a circumstance in the case the failure by the plaintiff to introduce witnesses summoned by her and present during the trial.

There was a verdict for plaintiff for $500, and judgment accordingly. Motion for new trial overruled, and defendants appeal.

*Dabney & McCabe*, for the appellants.

1. It is well settled that the gravamen of the suit must be proved, and that proof of the matters stated in aggravation of damages will not be sufficient. 1 Sutherland on Damages, 769. The gist of this action is clearly the forcible breaking and entering of plaintiff's dwelling. All else is matter in aggravation. We submit that the evidence fails to show any forcible entry into the house. If so, it is useless to inquire if the other matters complained of are proved.

2. The admission of the testimony of Dornbush and Mc-Laurin to impeach Anderson and Tipton was error. The latter had not had their attention called to the time, place and precise language supposed to have been used. They had no fair opportunity to deny the conversation. The testimony of Dornbush and McLaurin does not contradict Tipton in any essential particular, but, under the guise of doing so, they give hearsay statements and conclusions. This evidence must have been controlling with the jury.

3. The court erred in refusing the eighth, ninth and tenth instructions. It was manifestly the duty of the plaintiff to put on the stand the witness subpœnaed by her and present, especially in view of her manifest desire to work in the opin-

ions and statements of these witnesses under the guise of re-
butting evidence.

4. The court erred in giving instructions permitting a re-
covery upon a bare preponderance of the evidence. The
offenses charged in the declaration were criminal, being
burglary, robbery and forgery. Defendants are entitled to
the presumption of innocence. 19 Am. & Eng. Enc. L.,
1085. The instructions nowhere told the jury what was the
gist of the action. They should have announced that this
was the forcible breaking and entry into the house.

5. The offenses charged being criminal and highly penal,
punitive damages are not allowable. It is left to the state to
punish crimes. 76 Ill., 241; 73 *Ib.*, 69; 35 Iowa, 9; 7 Allen,
118; 4 B. Mon., 378; 7 Col., 541. In view of the varying
authorities, we submit this point with diffidence. See 1
Sutherland on Damages, 739.

6. It was error to instruct that mental suffering might be
considered in estimating damages, and, in addition, punitive
damages might be awarded. Damages for mental suffering
are included in punitive damages.

*Miller, Smith & Hirsh,* for appellee.

1. It cannot be seriously contended that the verdict is un-
supported by evidence.

2. Sufficient foundation was laid for the contradiction and
impeachment of Tipton and Anderson by Dornbush and
McLaurin.

3. There is no rule that requires a party to examine every
witness summoned. The witnesses were in court and avail-
able to the defendants.

4. Damages for mental suffering are compensatory, not
punitive, and the jury was properly instructed that it might
find such compensation, and, in addition, vindictive damages.

5. A preponderance of evidence is all that is necessary in
a civil action, although a crime is imputed. 19 Am. & Eng.
Enc. L., 1085.

WOODS, J., delivered the opinion of the court.

The testimony of the witnesses, Dornbush and McLaurin, offered in rebuttal, for the purpose of impeaching the witnesses, Anderson and Tipton, should have been excluded. The impeaching witnesses were not directed and confined to the inquiries propounded to Anderson and Tipton in laying the foundation for the introduction of impeaching evidence. They were asked generally to state what took place or what passed on the occasions referred to, and were permitted to state matters of fact not embraced in the predicate laid for contradiction, as well as to repeat to the jury the conclusions of mind arrived at by Anderson and Tipton.

The witnesses sought to be impeached should have been distinctly informed as to time, place and persons present when the supposed conversation took place, and the matter as to which it was designed to call impeaching witnesses should have been clearly and distinctly presented to their attention. And to the matters thus inquired about, the impeaching witnesses should have had their examination strictly confined, and should not have been asked to state what took place on the occasions referred to, and, in response, allowed to go outside of and beyond the issue presented in the predicate laid. The examination of the witness Dornbush was especially objectionable. By Dornbush's own vacillating statements it is left uncertain whether Tipton was even present when the conversations with Anderson occurred, and which, by assent, Tipton was supposed to have participated in to the extent of making Anderson's statements his own, as was attempted to be shown by Dornbush. The latitude of examination and reply, in the rebutting testimony, was unfair to the witnesses sought to be impeached, as well as hurtful to the appellants, and, because of the errors assigned in this particular, the judgment must be reversed.

The contention of counsel for appellant, that the gist of the complaint is the forcible entering of appellee's house, and that all its other recitals and averments, including the violent

seizure and carrying away of Dornbush's check, against the will of Mrs. Bowen, are matters stated merely in aggravation of damages, is without foundation. Her deprivation of the Dornbush check is the substantial offense charged in her declaration, and the other matters are averred in aggravation of damages. There is no burglary alleged, but only an entering with rudeness, and despite the remonstrance of the person whose house was invaded. This was only preliminary, and leading up to the real offense complained of, to wit; the taking by force, and carrying away against the will of the owner, the check of Dornbush.

There was no error in the refusal of the court to give the eighth, ninth and tenth instructions asked by appellants. We know of no reason why a litigant in a civil case shall be required to put upon the stand every witness, material or immaterial, whom he has had subpœnaed, and counsel have cited no authority in support of this view. It is certainly not the rule in this state, where it has been held by this court that, in prosecutions for the highest crimes, the counsel for the state cannot be required to put upon the stand all the witnesses whose names are indorsed on the indictment, and who are actually present in court. *Morrow* v. *State*, 57 Miss. In that case, the known bias of the two eye-witnesses to the killing, whom the state's counsel refused to introduce, was sufficient warrant for the counsel's declining to put them upon the stand, and vouch for their credibility. We are wholly unable to see why, in the case at bar, the appellee should be required to put upon the stand, and vouch for their credibility, witnesses whom she knew to be not in harmony with the statements she had already made under oath, and which fairly made out her case, if unchallenged and unopposed. To have done so would have utterly destroyed the case she had made by her own evidence; and this she could not have been required to do. But, in view of the fact that the witnesses whom the appellee subpœnaed and refused to examine, were in court, and actually put upon the stand

(two of them, at any rate) and examined for appellants, there seems to us no ground for complaint that all the eye-witnesses were not heard, and the jury put in possession of the facts as seen by the various spectators of the events transpiring on the night in question.

The views hereinbefore expressed will largely obviate the necessity for any large examination of the fourth and chief contention of counsel for appellants. We have already declared that the complaint did not charge a burglary by appellants, but that the gravamen of her declaration was the forcibly taking and carrying away, against appellee's will, of the Dornbush check. The theory of the learned counsel is repudiated by us, and there was no room for any application of the presumption of innocence. When the *onus probandi* has been successfully borne by appellee to the extent of reasonably satisfying the mind of the jury as to her right to a recovery on the substantial matter charged in her declaration, she has met the requirement of law, and presumptions of innocence on the part of appellants could not be thrust at appellee, with the demand that she now destroy them, in addition to proving her case by a preponderance of the evidence. The infirmity of the theory of counsel is that it rests upon the baseless assumption that a recovery was sought for breaking and entering the house of appellee, and not for the depriving her of her property. The circumstances recited by way of aggravation of damages, are erroneously believed by counsel to constitute the gist of the offense complained of.

What is demanded now to be further said on the fourth contention of appellants, as to the action of the court in giving appellee's instructions and refusing appellant's seventh charge, may be compressed into few words. The counsel are mistaken in supposing that the jury was authorized by the instructions complained of to award vindictive damages twice in this case. The mental suffering of appellee, the jury was clearly and properly informed, was an element to

be considered by it in estimating the compensatory damages to be awarded the appellee, and, in addition to these compensatory damages, including damages for mental suffering, the jury was instructed, properly, too, that exemplary damages might be awarded by way of punishment. The contention of counsel on this point, arises, we think, out of a total misapprehension of the meaning of the instruction given for appellee, in which the jury was advised as to the measure of damages to be employed in estimating appellee's right to recovery.

We find no error in the action of the court in giving and refusing instructions.

*Reversed.*