OSSER *v.* STATE.

(Division A. Feb. 6, 1933. Suggestion of Error Overruled Mar. 6, 1933.)

[145 So. 754. No. 30231.]

**Geo. T.** and **Chas. Mitchell** and **Blair & Anderson,** all of Tupelo, for appellant.

Blair & Anderson, of Tupelo, for appellant.

**W. D. Conn, Jr.,** Assistant Attorney-General, for the state.

**Cook, J.**, delivered the opinion of the court.

The appellant was indicted and convicted in the circuit court of Lee county on a charge of burglary, and was sentenced to serve a term of five years in the state penitentiary.

Leaving off the formal and jurisdictional parts, the indictment charged that the appellant did feloniously and burglariously break and enter the storehouse of J. W. Hallmark then and there situated, with intent the goods, chattels, and personal property of the said J. W. Hallmark, in said storehouse kept for sale, then and there feloniously and burglariously to take, steal, and carry away.

J. W. Hallmark, a witness for the state, testified that the business conducted in the storehouse alleged to have been burglarized belonged to his wife, Winona Hallmark,

and was conducted under the trade-name of J. W. Hallmark Grocery; that the stock of goods and merchandise contained in said building was her property, and the rent of the storehouse was paid out of the profits of the business. When this testimony was developed, the state requested, and was granted, permission to amend the indictment by substituting the name of Mrs. Winona Hallmark for that of J. W. Hallmark, as the owner of the property burglarized, and the appellant assigns as error this amendment of the indictment.

The conviction of appellant rests principally upon the testimony of an alleged accomplice, Thurman Shettles, who testified that, by previous arrangement between them, he and the appellant met at Mrs. Hallmark's storehouse on a certain Monday night about 8:30 o'clock for the purpose of breaking and entering the store and stealing a slot machine and the contents thereof; that the appellant secured a tow sack from a nearby garage and wrapped it around a stone which he gave to the witness for the purpose of breaking the door; that they then proceeded to the front of the store, where the witness Shettles broke the glass of the door with the wrapped stone; that they both entered the store and secured the slot machine, and the witness carried it out the back door and hid it under a small bridge, while the appellant went out the front of the store and went to his home nearby. This witness further testified that he later returned and moved the slot machine to the edge of a certain channel or canal; that he met the appellant the next morning, and they then secured fishing tackle for the pretense of fishing, and then went to the channel where he had hidden the slot machine; that the appellant broke open the slot machine with an axe, and thereupon divided the money found therein, amounting to about nine dollars, giving to the witness a little more than three dollars in nickles and retaining the balance. He further testified that later in the day the appellant

came to his (the witness') home and remained there throughout the night, and, in discussing the burglary in the presence of the witness and his wife, explained to them how he regained access to his home after the burglary, and made a pretended investigation at the store after pretending to have been aroused from his bed by a noise, and then reported the burglary to his father and those interested in the premises.

On cross-examination he testified that he and the appellant broke into the store again on the following Wednesday night, and that as he (the witness) left the store by the back door he was arrested by the sheriff. This witness was corroborated by his wife as to the statements and admissions of the appellant made in their home on Tuesday night after the burglary.

The appellant offered certain testimony tending to show that, with the knowledge and consent and at the request of the owner of the building alleged to have been burglarized, and others interested in detecting the perpetrators of a series of burglaries, he agreed to assist in detecting the guilty parties; that, in pursuance of this agreement, he joined the said Shettles in breaking and entering the said store on the night of Wednesday March 16, 1932; and that he notified the interested parties of the time this burglary would take place. However, as a witness in his own behalf, the appellant denied that he had any knowledge whatever of the Monday night burglary until after it had occurred, and positively denied that he participated in that burglary in any way. He testified that the first knowledge he had of the Monday night burglary was when he heard glass break at the store building while he was smoking in his bedroom, that he thereupon notified the interested parties, and that on investigation they discovered that the glass door had been broken and the store entered.

The appellant first assigns as error the action of the court in permitting an amendment of the indictment to

accord with the proof as to the ownership of the property alleged to have been burglarized. Section 1289, Code 1930, provides that, ''Whenever, on the trial of an indictment for any offense, there shall appear to be any variance between the statement in the indictment and the evidence offered in proof thereof, . . . or in the name or description of any person or body politic or corporate, therein stated or alleged to be the owner. of any property, real or personal, which shall form the subject of any offense charged therein . . . it shall and may be lawful for the court before which the trial shall be had, if it shall consider such variance not material to the merits of the case, and that the defendant cannot be prejudiced thereby in his defense on the merits, to order such indictment and the record and proceedings in the court to be amended according to the proof, whenever it may be deemed necessary by the court to amend such indictment, record, and proceedings, on such terms as to postponing the trial, to be had before the same or another jury, as the court shall think reasonable; and after such amendment, the trial shall proceed in the same manner, and with the same consequences in all respects, as if a variance had not occurred. . . .'' By this amendment there was no change in the identity of the property which was the subject of the offense charged, but merely a change in the identity of the owner of the particular storehouse alleged to have been burglarized. The identity of the offense charged was not thereby changed, and the amendment as to the ownership of the property alleged to have been burglarized was therefore permissible. This view is supported by the cases of Foster v. State, 52 Miss. 695, and Knight v. State, 64 Miss. 802, 2 So. 252. In the Foster Case it was held that on the trial of the cause it was permissible to amend the affidavit which charged the larceny of a cow, the property of Lewis Thompson, so as to charge that the cow was the property of Mrs. E. H. Taney. In

the Knight case, supra, the defendant was indicted for an unlawful trespass on the inclosed land of one Jesse Ridings. On the trial the proof for the state developed the fact that the land on which the trespass was committed was the property of Mrs. N. A. Ridings, wife of Jesse Ridings. The indictment was amended so as to charge that Mrs. N. A. Ridings was the owner of the land upon which the trespass was committed, and the court held that this amendment was proper under the then existing statute authorizing amendment of indictments, which was in substance and effect the same as section 1289, Code of 1930.

The appellant next assigns as error the refusal of a peremptory instruction requested by him. It is first contended that this instrucion should have been granted because there was no proof that "goods, wares or other valuable things were kept for use, sale, deposit or transportation" in the said storehouse as alleged in the indictment. The indictment was drawn under section 817, Code 1930, defining burglary as the "breaking and entering, in the day or night, any shop, store, booth, tent, warehouse, or other building, ship, steamboat, flatboat, or railroad car in which any goods, merchandise, or valuable thing shall be kept for use, sale, deposit, or transportation, with intent to steal therein, or to commit any felony." We think the fact that goods, wares, and merchandise were kept in the store for use and sale is sufficiently established by the proof. The evidence shows that the building which was burglarized was used as a storehouse; that a business was conducted therein under the trade-name of J. M. Hallmark Grocery; that a stock of goods and merchandise was kept in the store; and that the rent for the storehouse was paid out of the profits of the business conducted therein. From these facts no other reasonable conclusion could be drawn than that the goods and merchandise kept in the storehouse were kept for use and sale.

It is next contended that this peremptory instruction should have been granted, for the reason that the proof shows that the appellant's participation in the breaking and entering was with the full approval and consent of the owners and those in possession of the premises burglarized, and therefore there was no intent on his part to take, steal, or carry away any of the goods from the storehouse. This contention overlooks the positive denial of the appellant that he participated in the Monday night burglary, or that he had any knowledge thereof until after it had been consummated, and does not take into consideration the testimony for the state that on the day after the burglary the appellant smashed the slot machine which had been stolen from the storehouse and appropriated to his own use more than half of the money found therein and lost the same in a crap game the following night. The state rested its case upon testimony to establish a burglary on Monday night March 14, 1932, participated in by the appellant and the witness Shettles. The appellant denied participating in that burglary in any way, and denied that he had any knowledge that such burglary was planned or contemplated. Upon his own testimony he was certainly not entitled to a peremptory instruction upon the theory that he had participated in the burglary in good faith and with the approval and consent of those in possession of the premises for the purpose of detecting the guilty parties.

The appellant next complains of the two instructions granted to the state. By the first of these instructions the jury was charged that it should convict the defendant if it believed from the evidence beyond a reasonable doubt that he did feloniously and burglariously break and enter the storehouse of Mrs. Winona Hallmark at the time and place and in the manner and form charged in the indictment. The second instruction complained of informed the jury that, although it might believe from the evidence that the defendant did not actually do the

breaking of the door himself, yet, if it further believed from the evidence beyond a reasonable doubt that he was present, aiding, encouraging, and abetting the party who did the breaking at the time and place, and in the manner and form charged in the indictment, then he was guilty of the offense charged. The appellant requested and was granted the following instruction: "The court instructs the jury that if you believe from the evidence or have a reasonable doubt thereof, that at the time of the alleged burglary, defendant was acting in connection with the owners, or others interested in the property alleged to have been burglarized, in good faith and in an effort to ascertain the guilty parties then you will find defendant not guilty even though you may further believe that he was present at the time of the breaking."

It is the contention of the appellant that the two instructions granted the state were erroneous for the reason that they omitted the theory of defense that the appellant was acting in connection with the owners, or others interested in the property, in good faith, in an effort to ascertain the guilty parties, and that these instructions are in conflict with the instruction given to the appellant. Assuming for the purpose of this decision that, upon the evidence in this record, the appellant was entitled to the instruction above quoted, we do not think it is in conflict with the state's instructions. When read in connection with the state's instructions, it merely supplements the instructions and supplies the omissions, if any, therein, and the three instructions together furnish a correct and complete guide to the jury in passing upon the respective theories presented by the evidence.

There was no reversible error in the admission or exclusion of evidence, and therefore the judgment of the court below will be affirmed.

Affirmed.