MAYS *v.* STATE.

Feb. 23, 1953

No. 38628      21 Adv. S. 46      63 So. 2d 110

*King & King,* for appellant.

*Geo. H. Ethridge,* Assistant Attorney General, for appellee.

634

ETHRIDGE, J.

·Appellant Charlie Mays was convicted in the Circuit Court of Quitman County of contributing to the delinquency of a minor, 16 years of age, his son, in violation of Mississippi Code of 1942, 1950 Supplement, Section 7185-13, which provides in part: "Any parent, guardian or any other person who wilfully commits any act or omits the performance of any duty which act or omission contributes to or tends to contribute to the neglect or delinquency of any child as defined in this act, . . . shall be guilty of a misdemeanor, and upon conviction shall be punished by a fine not to exceed $500.00, or by imprisonment not to exceed six months in jail, or by both such fine and imprisonment."

This statute is part of the Youth Court Act of 1946, being Section 13 of Mississippi Laws of 1946, Chapter 207. Section 2(g) thereof, being Code of 1942, 1950 Supplement, Section 7185-02(g), contains the following definition:

" 'Delinquent child' is synonymous with the meaning of what is commonly called a juvenile offender, and means any child not less than ten (10) years of age whose occupation, behavior, environment or associations are injurious to his welfare or the welfare of other children; or who deserts his home; or who is habitually disobedient to or beyond the control of his parents, guardian or custodian; or who being required to attend school wilfully violates rules thereof, or wilfully absents himself therefrom; or who violates any state law or municipal ordinance; or who, by reason of being habitually wayward or habitually disobedient, becomes an incor-

rigible or uncontrollable child; or who so deports himself as to injure or endanger the morals or health of himself or any other person.''

Sheriff J. H. Kimbro of Quitman County and two other officers testified that on the night of April 28, 1952, they hid themselves in a house rented and occupied by a negro named Baker Caines, which was on a farm south of the City of Marks in Quitman County. They had previously found 97 gallons of whiskey in a small out building behind that house. At about 8 o'clock that night two negroes came for the whiskey, but Caines, in accordance with the officers' instructions, told them that he would not turn it over to anybody but the owners. About thirty minutes later a white man came to Caines' door, and Caines told him that some cotton-seed had been stolen at this place and that they must move the whiskey that night. At about 10 o'clock P.M. appellant Charlie Mays and his son Charles Lamar Mays, otherwise referred to as Charlie Mays, Jr., drove up the gravel road towards Caines' house, and he and his boy got out of the car and came to Caines' front door. Appellant told Caines that the whiskey was his and that ''they'' were not going to steal his whiskey, that he would be back after it. The officers remained in Caines' house. At 1 o'clock A.M., April 29th, appellant, W. B. Long, and appellant's son ''returned for the whiskey.'' It was located in a little building or barn situated directly behind the kitchen of Caines' house on the south end, about 15 feet from the house. This barn had a door on the north part of the east side which would be seen from the back window of the kitchen. Appellant, Long and Charlie, Jr., first stopped in their car on the road and shone a flash light around about the house, apparently in order to see whether anyone was in that vicinity. The car in which these three parties were riding was then backed up to the east door of the barn. Charlie, Jr., and Caines went inside the barn. Long and appellant were standing between the car and the barn. One or both of

the persons in the barn were passing the whiskey out to Long and appellant, who in turn loaded the whiskey in the car. The sheriff, the two other officers, and a negro named Winston, who was accompanying the officers, all testified on direct examination that they saw Charlie, Jr., handing the whiskey out to his father, the appellant, and to Long. However, on cross-examination they all frankly stated that they did not actually see Charlie, Jr., with any whiskey in his hand, but they knew he was in the building with Caines, and they inferred that he was handing the whiskey out. After watching this operation from the kitchen window for a short time, the officers went out and arrested appellant and his companions.

Baker Caines, the negro in whose house the officers had hidden, testified for the State. He said that Charlie, Jr., was present in the barn but that he was not doing anything, just standing by the side of the door; that he, Caines, was doing all of the handing out of the whiskey from the barn, and that Charlie, Jr., did not touch it. Long was driving the car. City Policeman McArthur testified that while Long was backing the car up to the barn, appellant and his son were shining a light at the back door of the house to enable the car to back up to the adjacent barn door. When the officers got to the barn prior to the arrest, Caines and appellant's son were on the inside of it. Deputy Sheriff Brown said that appellant and his son looked around the place with their flash lights before backing up to load the liquor.

Charlie Mays, Jr., testified for the defendant. He said that on that night he was at home watching television, when his uncle walked in. The uncle told him that Charlie, Jr.'s, grandfather was sick with cancer in a Jackson hospital. His mother told him to find his father and tell him about this. A woman friend of the family drove him to Caines' house. Someone else had told him where his father was supposed to be. The first time Charlie, Jr., said he saw his father and Long was when

they pulled in the driveway to Caines' house around 1 A.M. He remained with his father so that appellant could go with him. He said that he took no part in any loading of whiskey, and that his grandfather had had cancer for a long time. Appellant testified in his own behalf, and supported his son's version. He denied he took the boy to Caines' house with him, and denied that the boy participated in any way in handling the whiskey. He admitted that he had gone down to Caines' house to see if anyone had disturbed the whiskey and that he had loaded some of the whiskey in the car. Both Charlie, Jr., and appellant denied that Charlie, Jr., went to Caines' house with his father around 10 o'clock that night. The officers testified that the boy was there at that time also, on appellant's previous visit to the house.

The original affidavit in the Justice of the Peace Court, where appellant was also convicted, charged him with unlawfully contributing to the delinquency of his son, a minor, who was 16 years of age, "by permitting and using said child to aid and help him in the loading and distributing of intoxicating liquors." After the State had presented its witnesses, and before it rested, the circuit court permitted an amendment to the affidavit so as to further charge the unlawful contributing to the delinquency of this minor "and by knowingly and intentionally permitting said minor to be present with the defendant while the defendant was loading said intoxicating liquors." Appellant complains that the trial court erred in overruling appellant's objections to this amendment to the affidavit and in permitting it. The amendment was allowed under the provisions of Code 1942, Section 2535: "When an appeal is presented to the circuit court in any criminal case from the judgment or sentence of a justice of the peace or municipal court, it shall be permissible, on application of the state or party prosecuting, to amend the affidavit, pleading, or proceedings so as to bring the merits of the case fairly to trial on the charge intended to be set out in the origi-

nal affidavit; the amendment to be made on such terms as the court may consider proper.''

Appellant says that the effect of the amendment was to change entirely ''the charge intended to be set out in the original affidavit.'' However, we think that the amendment was proper and within the terms of Section 2535. The basic charge was contributing to the delinquency of a minor, appellant's son, on the stated day and with reference to the stated intoxicating liquors. Whether this was done by getting the boy to physically load the liquors in the car, or by procuring him to help appellant and go to Caines' house early in the evening, and later with appellant search the premises with a flash light, and help them back the car to the barn prior to loading the liquor, is a matter of detail in the description of the essential charge of the offense committed. The amendment did not change the offense. Patterson v. State, 179 Miss. 758, 176 So. 603, (1937); Wilson v. Aberdeen, 179 Miss. 751, 176 So. 601, (1937); Cannon v. State, 140 Miss. 217, 105 So. 501, (1925). Hudson v. State, 73 Miss. 784, 19 So. 965, (1896), relied upon by appellant, involved an entirely different type of amendment to an affidavit. There appellant was charged with selling whiskey to three named persons. On appeal after conviction in a mayor's court, the circuit court permitted the State to strike out the names of the three persons named in the original affidavit. On the trial the State proved only a sale to one Hollingsworth, who was not one of the three persons named in the original affidavit. It was held that this was a wholly distinct offense. But in the instant case the essential charge is the same in both the original affidavit and the amendment, so the amendment was properly allowed.

It is further urged that appellant was entitled to a peremptory instruction, and that the verdict is against the great weight of the evidence. However, the State's evidence and that of appellant in many respects was in direct conflict, and the jury was warranted in accepting

the version testified to by the officers. In fact, there was no dispute whatever that appellant's son was present. The dispute centered around whether he took any active part in helping appellant's activities concerning the whiskey at that time. The jury was warranted in finding, as reasonable men, not only that appellant's son did what the officers actually saw him do, but also in inferring that Charlie, Jr., participated in the actual loading of the liquor by helping hand it out of the barn. Whether this inference was so made by the jury is not material, however, because the State's case, accepted by the jury, was clearly to the effect that appellant brought his son out to Caines' house with him at 10 o'clock that night, and that he later also brought him along with him, that the boy helped ascertain whether there was anyone in the vicinity, and helped in the guiding and placing of the truck, and to that extent at least in the loading of the liquor. The boy certainly took considerably more than a passive part in his father's activities on the occasion in question. It was an active part. Hence under the statute appellant's conviction for contributing to the delinquency of this minor was amply justified.

Complaint is made about two statements made by the District Attorney in his closing argument to the jury, but we do not think that the statements made exceeded the legitimate discretion of a prosecuting officer in the light of this evidence. Gray v. State, 90 Miss. 235, 43 So. 289 (1907); Nelms & Blum Company v. Fink, 159 Miss. 372, 131 So. 817 (1930); Pitts v. State, 211 Miss. 268, 51 So. 2d 448. (1951).

Affirmed.

*McGehee, C. J.,* and *Hall, Lee* and *Arrington, JJ.,* concur.