BELINA *v.* STATE

No. 40166          June 4, 1956          87 So. 2d 919

*T. J. White,* Gulfport, for appellant.

*J. R. Griffin,* Asst. Atty. Gen., Jackson, for appellee.

HALL, J.

On December 29, 1955, appellant was convicted of the murder of Edward Handy and was sentenced to death. The facts disclosed by the testimony of three eye-witnesses and disputed only by the appellant are as follows: Handy owned a Mercury automobile and lived in Long Beach, Mississippi. He was employed to carry Carrie Woods and Ernest Johnson to Pass Christian. They both lived in the home of Ella Johnson in Long Beach. Handy drove to this place and picked up Carrie Woods and Ernest Johnson. Ella was in the yard at the time, which was between three and four o'clock P.M. on July 9, 1955. Belina owned an automobile which was hard

to start and on several occasions Handy had pushed Belina's automobile to help him get started. On the occasion in question Belina had been having trouble with his car and he got in a car with one Mark Easton who was unable to push Belina's car with his car and they drove down the street until they saw Handy. Carrie and Ernest were already in Handy's car and they were about to depart for Pass Christian. Easton stopped his car across the street from Handy and Belina got out and went across to Handy's automobile and requested Handy to go and push his car. This Handy refused to do and Belina cursed him for a name which is unprintable. Thereupon Handy got out of his car and he and Belina met at or near the rear of Handy's car. Handy was unarmed but Belina had a dirk knife and stabbed Handy a deep wound on the left chest. Handy thereupon started trying to unlock the trunk of his car and Belina, still using the dirk knife, cut several times at Handy's hand to prevent him from opening the trunk. Handy thereupon ran, made a circle, with Belina chasing him, and got back to the trunk of his car in time to unlock it and get it open. He took from the trunk a scythe or grass blade. Thereupon Belina ran and Handy chased him about 150 feet until they both disappeared behind a building and out of the view of the eye-witnesses. While behind the building Handy inflicted a serious wound upon Belina, slitting his head open down the middle so that his brains were exposed. Belina fell upon the weeds and Handy returned to the proximity of his car and sat down beside the street and asked to be carried to a doctor. He was put in a car and carried to the hospital at Gulfport but was dead upon arrival. The doctor who examined him testified that he died as a result of the deep stab wound in his left chest. Belina was also carried to the same hospital and there remained for a period of sixty-five days and apparently recovered from his wound. He was indicted for murder at the December term of court

and was tried on December 28th and 29th with the result above-stated.

Carrie Woods, Ernest Johnson and Ella Johnson all testified that Belina stabbed Handy at a time when Handy had no weapon upon him and before he had ever gotten to the back of his car to get out the grass blade. Belina denied this and claimed that he did not stab Handy until Handy opened the trunk of his car and was getting out the grass blade. Thus there was an issue of fact for the jury, which the jury resolved against the appellant. Appellant's first complaint is that the trial court erred in granting the following instruction for the State:

"The Court instructs the jury for the state that if you believe from the evidence beyond every reasonable doubt and to a moral certainty that the defendant, Nauldon Belina, did wilfully, unlawfully, feloniously and of his malice aforethought kill and murder the deceased, Edward Handy, by stabbing him with a knife at a time when the deceased was making no overt act toward the defendant and at a time when the said Nauldon Belina was not acting in necessary self-defense and if you further believe from the evidence beyond every reasonable doubt that the defendant, Nauldon Belina, stabbed the deceased, Edward Handy, as aforesaid with the deliberate design to effect the death of the said Edward Handy and not in necessary self-defense, then the defendant would be guilty of murder, and it would be your sworn duty to say so by your verdict; and the Court further instructs you that this would be true even though you may believe that after the fatal stabbing occurred, if in fact you find it to have occurred as aforesaid, beyond every reasonable doubt from the evidence that the deceased after being stabbed and prior to his death committed a violent assault upon the person of the defendant, Nauldon Belina."

No complaint is made at the first portion of the instruction. It is only contended that it was error to instruct the jury that, under the circumstances stated in the instruction, the jury should convict the defendant even though they may believe that after the fatal stabbing occurred that the deceased, after being stabbed and prior to his death, committed a violent assault upon the person of the defendant. No authority is cited as to why the instruction is not correct, and after a careful consideration of the entire instruction we are of the opinion that it is a correct statement of the law, and is not a comment on the weight of the evidence as contended by appellant.

██ ██ The indictment in this case charged the defendant with the murder of Edward Handley. During the course of the trial it developed that the deceased's name was Edward Handy. Thereupon the district attorney moved the court for leave to amend the indictment so as to correctly spell the name of the deceased, and the court sustained this motion. He was eminently justified in so doing under the provisions of Section 2532 of the Code of 1942, and committed no error in so doing.

██ ██ Some time before the trial of appellant his mother employed Mr. William Estopinal to defend him. On the day before the trial began, a brother of the appellant employed Messrs. White and Lindsey. The latter attorneys filed a motion for a new trial on the ground that the appellant was deprived of his constitutional right to be represented by counsel in that Mr. Estopinal did not cooperate with them in the trial of the case. Testimony was taken upon the hearing of the motion for a new trial and Mr. White and Mr. Lindsey testified, and both admitted that it was agreed that Mr. Estopinal would be the leading counsel. The court dictated into the record an opinion at the close of the testimony on the motion for a new trial and stated that in his opinion that a review of the whole record will show that appel-

lant was fairly represented by counsel; that in the opinion of the court he was convicted on the facts and the evidence in the case and not upon the disagreement between the lawyers nor upon any limitation which was placed upon Messrs. White and Lindsey. The court stated that before the trial began Mr. Estopinal made the statement that he was accepting assistance with limitations and the court then raised the question and made it clear to all of the attorneys that the court would place no limitations upon the assistance of counsel and that the court would not at any time during the trial prohibit associate counsel from making any objections, and the court stated that it allowed them to take any part in the case that a counsel takes at any time in any case. The court again pointed out that Mr. Estopinal handled the case in a fair manner and that cases are not decided on the ability of counsel but upon the facts in evidence. Mr. Lindsey testified that the presiding judge was most fair and made every effort to straighten out the situation at the beginning of the trial. He also testified that neither he nor Mr. White at any time requested the court to give them the right of direct or cross-examination of any witness. He also testified that he and Mr. White did not make any objections to any of the evidence and that the court did not rule that they could not make such objections. He said that he and Mr. White assumed the restriction upon them voluntarily. He also testified that on the morning of the trial he went to the defendant's cell without the presence of either White or Estopinal and told the defendant that he was going to be convicted and advised him to plead guilty and take whatever sentence he could get. He also testified that Mr. Estopinal conveyed to the defendant a proposition made by the district attorney to plead guilty to manslaughter and take a sentence of fifteen years in the penitentiary and that the defendant declined to do this. Mr. White testified that the trial judge was absolutely fair and impartial

in the course of the trial. We have carefully reviewed the entire record and we are of the opinion that the appellant had a fair trial. Many objections to the reception of evidence were made by Mr. Estopinal and we do not find where he neglected the interest of his client in any manner. Fourteen instructions were granted by the trial judge to the defendant which submitted every conceivable phase of the defense, including that of self-defense and manslaughter. It is regrettable that the attorneys in the case have apparently fallen out with each other but the disagreement did not deprive the appellant of any of his constitutional rights as argued by him. The judgment of the lower court must therefore be affirmed.

Affirmed, and Friday, July 27, 1956, is hereby fixed as the date of execution.

All justices concur, except *Holmes, J.,* who took no part.

## ON MOTION TO SET NEW EXECUTION DATE

January 7, 1957                                    91 So. 2d 759

HALL, J.

Appellant was convicted for murder by the Circuit Court of Harrison County, Mississippi, on December 29, 1955, and was sentenced to death, and upon appeal to this Court the judgment of the trial court was affirmed on June 4, 1956, and the date of execution of the death sentence was fixed for July 27, 1956. Belina v. State, 87 So. 2d 919. Appellant then filed in the Supreme Court of the United States a petition for writ of certiorari, which Court on December 3, 1956, denied said petition in Cause No. 266, Misc. October Term 1956. The mandate from the Supreme Court of the United States was duly filed in this Court on December 8, 1956, and, the date formerly set for execution having passed, the State has filed in this Court a motion to have another date fixed for execution of the death sentence on appellant.

The said motion is hereby sustained, and Wednesday, February 13, 1957, is hereby set for the date of appellant's execution.

All justices concur.