434 So.2d 220 (1983)
Johnny Ray BINGHAM
v.
STATE of Mississippi.
No. 53757.
Supreme Court of Mississippi.
June 1, 1983.
Rehearing Denied July 27, 1983.
*221 Herring & Self, James H. Herring, Canton, for appellant.
Bill Allain, Atty. Gen. by Frankie Walton White, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before BROOM, HAWKINS and DAN M. LEE, JJ.
DAN M. LEE, Justice for the Court:
This is an appeal from the Circuit Court of Madison County wherein Johnny Ray Bingham, defendant/appellant, was indicted and tried for the September 13, 1980, murder of Ozell Carter. The jury found Bingham guilty of manslaughter, whereupon he was sentenced to serve a term of 15 years in the custody of the Mississippi Department of Corrections. Bingham now appeals his conviction and sentence to this Court and assigns the following errors for reversal:
PROPOSITION ONE
The trial court erred in granting the oral motion of the district attorney, after the jury had been empaneled, to amend the indictment rendered by the grand jury against the defendant, Johnny Ray Bingham, to reflect the name of the person killed to be Ozell Carter rather than Mozell Carter as shown on the face of the indictment.
PROPOSITION TWO
The trial court erred in failing to sustain the objection by the defendant to the statement made by the district attorney to the jury during voir dire examination that if the court instructed the jury that the state of Mississippi would be required to prove that the defendant was guilty beyond a reasonable doubt, the jury should not interpret that to mean that they must find the defendant guilty beyond a shadow of a doubt.
PROPOSITION THREE
The trial court erred in failing to sustain the motion for a mistrial of the defendant to the statement made by the district attorney to the jury during voir dire examination that if the court instructed the jury that the state of Mississippi would be required to prove that the defendant was guilty beyond a reasonable doubt, the jury should not interpret that to mean that they must find the defendant guilty beyond a shadow of a doubt.

*222 PROPOSITION FOUR
The trial court erred in failing to sustain the objection of the defendant to the testimony of Sheriff W.B. Noble during the state's rebuttal as to what Roy Lee Lawson told him on the night of September 13 and 14, 1980.
PROPOSITION FIVE
The trial court erred in failing to grant the motion for mistrial of the defendant concerning the testimony of Sheriff W.B. Noble, during the state's rebuttal, as to what Roy Lee Lawson told him on the night of September 13 and 14, 1980.
PROPOSITION SIX
The trial court erred in failing to grant the defendant's motion for new trial since the verdict of the jury was against the overwhelming weight of the evidence.
During the evening hours of September 13, 1980, several people attended a party at the home of Emma Caldwell. Among those present were the appellant and Ozell Carter, deceased.
Sometime during the evening Ozell Carter attempted to sit down next to Emma Caldwell who resisted his advances. Carter then grabbed Miss Caldwell by the arm; however, she jerked away and walked to the front porch of the residence. When appellant, Emma's boyfriend, inquired as to what was wrong, she explained that Carter kept "messing" with her. Appellant responded that he would talk to Carter.
When appellant confronted Carter with the matter, an argument erupted. According to witnesses for the state, appellant shot Carter while Carter was pouring beer into a cup. Appellant and his witnesses testified, however, that Carter set his cup down and then reached into his pocket before appellant shot him. Appellant and his witnesses, who knew that Carter had a reputation for carrying a weapon, believed Carter was reaching for a weapon at the time appellant fired the fatal shot. It was subsequently learned, however, that Carter was unarmed. Witnesses for the state denied that Carter made any move resembling an effort to produce a weapon.
Carter died from a single .38-caliber wound to the right temple.
The jury returned a verdict of guilty of manslaughter, whereupon appellant was sentenced to serve a term of 15 years in the custody of the Mississippi Department of Corrections.
I. Did the trial court err in granting the state's ore tenus motion to amend the indictment after the jury had been empaneled to change the name of the victim from Mozell Carter to Ozell Carter?
The indictment in the case at bar charged as follows:
THE STATE OF MISSISSIPPI COUNTY OF MADISON
IN THE CIRCUIT COURT OF SAID COUNTY, MARCH TERM, 1981.
The Grand Jurors of the State of Mississippi, taken from the body of good and lawful citizens of said county, elected, summoned, empaneled, sworn and charged to inquire in and for the body of the county aforesaid, at the term aforesaid of the Court aforesaid, in the name and by the authority of the State of Mississippi, upon their oath present that JOHNNY RAY BINGHAM late of the county aforesaid, on or about the 14th day of September, 1980, in the county aforesaid and within the jurisdiction of this Court, did wilfully, unlawfully and feloniously, and of his malice aforethought, kill and murder one Mozell Carter, a human being.
After the jury was empaneled on the day set for trial (September 14, 1981), the state moved ore tenus to amend the indictment by changing the victim's name from Mozell Carter to Ozell Carter. A hearing was held, whereupon the trial court found that the grand jury intended to indict appellant for the murder of Ozell Carter. Therefore, the amendment was allowed. The trial judge, however, declared a mistrial and reset the case for the following Thursday (September 23, 1981), to allow appellant additional time he might need to make certain changes in *223 his trial strategy and therefore avoid any possible prejudice appellant may have suffered due to the granting of the amendment.
MCA § 99-17-13 (1972) provides that:
Whenever, on the trial of an indictment for any offense, there shall appear to be any variance between the statement in the indictment and the evidence offered in proof thereof, in the name of any county, city, town, village, division, or any other place mentioned in such indictment, or in the name or description of any person or body politic or corporate, therein stated or alleged to be the owner of any property, real or personal, which shall form the subject of any offense charged therein, or in the name or description of any person, body politic or corporate, therein stated or alleged to be injured or damaged; or intended to be injured or damaged, by the commission of such offense, or in the Christian name or surname, or both, or other description whatever, of any person whomsoever, therein named or described, or in the ownership of any property named or described therein, or in the description of any property or thing, it shall and may be lawful for the court before which the trial shall be had, if it shall consider such variance not material to the merits of the case, and that the defendant cannot be prejudiced thereby in his defense on the merits, to order such indictment and the record and proceedings in the court to be amended according to the proof, whenever it may be deemed necessary by the court to amend such indictment, record, and proceedings, on such terms as to postponing the trial, to be had before the same or another jury, as the court shall think reasonable. After such amendment, the trial shall proceed in the same manner, and with the same consequences in all respects, as if a variance had not occurred; but if the court shall, on application, refuse a continuance, the defendant may take a bill of exceptions thereto, and assign such refusal for error.
The test for determining whether an accused has been prejudiced by an amendment to an indictment is stated in Byrd v. State, 228 So.2d 874 (Miss. 1969):
Section 2449 of the Mississippi Code of 1942 Annotated (1956) provides for the amendment of indictments in cases of formal defects. It will be noted that the amended indictment did not change the crime charged and did not add any new elements thereto. As stated in 42 C.J.S. Indictments and Informations § 240, page 1250 (1944):
The test of whether an accused is prejudiced by the amendment of an indictment or information has been said to be whether or not a defense under the indictment or information as it originally stood would be equally available after the amendment is made and whether or not any evidence accused might have would be equally applicable to the indictment or information in the one form as in the other; if the answer is in the affirmative, the amendment is one of form and not of substance, * * *
This is the rule that has been adopted by our Court. Kelly v. State, 239 Miss. 683, 124 So.2d 840, 85 A.L.R.2d 1199 (1960); Gillespie v. State, 221 Miss. 116, 72 So.2d 245 (1954); Hearn v. State, 219 Miss. 412, 69 So.2d 223 (1954); Perciful v. Holley, 217 Miss. 203, 63 So.2d 817 (1953); Mays v. State, 216 Miss. 631, 63 So.2d 110 (1953); Osser v. State, 165 Miss. 680, 145 So. 754 (1932); Sauer v. State, 166 Miss. 507, 144 So. 225 (1932). (228 So.2d at 875-76)
In Jones v. State, 279 So.2d 594 (Miss. 1973), this Court upheld an amendment to the indictment during trial which corrected the victim's name from Larry Smith to James Smith in a prosecution for the sale of marijuana. In McDole v. State, 229 Miss. 646, 91 So.2d 738 (1957), an amendment to an indictment prior to trial was upheld in a burglary prosecution to correct the victim's name from Vernell Harris to Ida Pearl Harris. In Gillespie v. State, 221 Miss. 116, 72 So.2d 245 (1954), an amendment to an indictment was upheld in a murder prosecution during trial to change the victim's name from Mack Edwards to Lish Edwards. *224 Davis v. State, 150 Miss. 797, 117 So. 116 (1928), involved a murder prosecution wherein this Court upheld an amendment to an indictment during trial to reflect the victim's name as Man Jones rather than Ernest Jones. In State v. Grady, 147 Miss. 446, 111 So. 148 (1927), this Court held that if letters in an indictment preceding the names of the partners of a business were initials and not the partners' full Christian names, such could be amended to correspond to the facts. Finally, in Miller v. State, 68 Miss. 221, 8 So. 273 (1896), an amendment to an indictment was upheld in a murder prosecution to allow the true Christian name of the deceased.[1]
In Parchman v. State, 279 So.2d 602, 603 (Miss. 1973), this Court stated:
With respect to amendments which seek to change the name or description of a person to which the indictment refers, it has been held that changes which conform the indictment so as to correctly name the person intended by the grand jury are allowable. However, if the amendment results in changing the identity of the person, so as to name a person other than the one intended by the grand jury, it is a substantive change and is not allowable. Blumenberg v. State, 55 Miss. 528 (1878). In Blumenberg, the defendant was indicted for selling liquor to one J.T. Middlebrook. At trial, the court allowed an amendment so as to change the name to A.T. Middlebrook. Development of the evidence revealed that J.T. Middlebrook and A.T. Middlebrook were separate persons and that the defendant had sold liquor to each on different occasions. It was apparent that the grand jury had intended J.T. Middlebrook; thus the amendment charged a separate offense involving a different person. The court held that this was not allowable.
(279 So.2d at 603)
However, the Court distinguished the facts in Blumenberg from Parchman as follows:
These were two separate and distinct sales of liquor, whereas here, there was one shooting from which both Harmon and Brady sustained wounds.
(279 So.2d at 604)
The Court then affirmed in Parchman stating:
The defendant was not prejudiced by the amendment. The record affirmatively shows that the grand jury intended to indict the defendant for shooting Grady Rainey. Moreover, even if this were not true, the merits of the case would be the same and a defense available in one would be available in the other.
(279 So.2d at 604)
The proof presented during the hearing established that the grand jury intended to indict appellant for the murder of Ozell Carter. Moreover, even if this were not true, the merits of the case would be the same and a defense available in one would be available in the other. Appellant admitted the shooting and had known Ozell Carter for quite some time prior to the indictment. The trial judge, in an effort to prevent any prejudice to the appellant, declared a mistrial and reset the case for September 24, 1981, to allow appellant additional time to adjust or further plan his trial strategy. Under these circumstances, we do not believe the trial court erred in allowing the amendment to the indictment in the instant case.
II. Did the trial court err in failing to sustain appellant's objection and subsequent motion for mistrial to the district attorney's remark made during voir dire examination that if the court instructed the jury that the state would be required to prove appellant's guilt beyond reasonable doubt, the jury should not interpret that to mean that they must find appellant guilty beyond a shadow of a doubt?
*225 The record does not reveal a transcription of voir dire examination; however, the following colloquy depicts the matter of which appellant complains:
Let the record show that the jury has been excused to the jury room. Ladies and gentlemen, I want to make a record at this point of one objection that was lodged during voir dire. Let the record show that during voir dire examination the state asked the prospective jurors something to the effect of if the court instructed them that they, that the state would be required to prove the defendant guilty beyond a reasonable doubt they would follow the law and make them prove no greater burden than the law required and that they would not interpret that to mean that the state would have to prove the case beyond a shadow of a doubt. That's my recollection of it. The defense objected to that and the objection was overruled.
BY MR. SMITH:
Judge, I did not use the word "interpretation", I clearly did not use that.
BY THE COURT:
Make a record of it. We want to make the best record we can of what happened.
BY MR. SMITH:
The Court is not saying that I used that word, "interpretation".
BY THE COURT:
It is my recollection of it that the district attorney simply asked the jury if they would not require the state to prove the defendant guilty beyond a shadow of a doubt but only beyond a reasonable doubt as instructed. Is that your recollection of it Mr. Herring?
BY MR. HERRING:
That is correct, your Honor and the basis of our objection to that is that the Supreme Court has universally condemned the instruction to the jury that in order to convict the defendant you do not have to know that the defendant is guilty of a crime but that you only have to find him guilty beyond a reasonable doubt, so we feel that the argument made by the State, in all due respects, was improper and with the improper voir dire question to the jury we would at this time, out of the presence of the jury, make a motion for a mistrial on that basis.
BY THE COURT:
The motion for a mistrial is overruled.
Appellant argues that the district attorney's question was highly improper and relies upon the general principle that jury instructions which attempt to define reasonable doubt are improper.
There was no jury instruction which attempted to submit to the jury a definition of reasonable doubt. In this case we do not believe this assignment of error is meritorious. Moreover, the trial court has considerable discretion on propriety of questions addressed to prospective jurors. Myers v. State, 268 So.2d 353 (Miss. 1972).
III. Did the trial court err in failing to sustain appellant's objection to the testimony of Sheriff W.B. Noble in rebuttal of appellant's witness Roy Lee Lawson?
During cross-examination of defense witness Roy Lawson, the district attorney inquired as to why Lawson did not tell Sheriff Noble his version of the events of the shooting when questioned on the night of the incident. Lawson admitted he had not given the sheriff a statement as to how the shooting occurred, but explained he did not do so because he was not asked. In rebuttal, the state recalled Sheriff Noble who testified that it was Lawson who informed him as to who had shot Carter. Sheriff Noble further testified that Lawson stated he did not see what had happened.
Appellant contends it was error to allow Sheriff Noble to testify to the preceding events because the state failed to lay a proper predicate for the admission of such testimony. The state contends this testimony did not discredit the testimony of Lawson; therefore, laying a proper predicate for its admission was inapplicable.
In Carlisle v. State, 348 So.2d 765 (Miss. 1977), this Court stated:
Of course, in laying the predicate to introduce prior inconsistent statements of a *226 witness, the questions should include whether or not on a specific date, at a specific place, and in the presence of specific persons, the witness made a particular statement. Bonelli et al. v. Bowen, 70 Miss. 142, 11 So. 791 (1892). Then with the predicate properly laid, the witness may be impeached by showing prior statements inconsistent with the in-court testimony, so long as the statement made in court is one relevant to the issue in the case and therefore not collateral. Williams v. State, 73 Miss. 820, 19 So. 826 affirmed 120 U.S. 213, 18 S.Ct. 583, 42 L.Ed. 1012 (1896).
(348 So.2d at 766)
The following testimony was elicited from Lawson on cross-examination:
Q. All right, and you didn't tell the sheriff what you've told here today, did you?
A. I told him what he asked me. He asked me did I see the shooting. I told him "yes". He asked me who shot and I told him.
Q. You didn't say anything about these other matters to the sheriff that you've told the jury though, did you Mr. Lawson? Just answer the question.
A. I sho didn't.
Q. Why?
A. Because he didn't ask that.
Q. He didn't ask.
A. I answered what he asked.
Q. All right sir. And you know that you saw Ozell reach for his right rear pocket, is that right?
A. That's right.
Q. And you're certain of that?
A. I'm certain of it.
Q. Right, and you didn't tell the Sheriff about that either, did you?
A. Sheriff didn't ask me.
The state clearly elicited from Lawson that he told the sheriff on the night of the incident that he had seen the shooting take place. This opened the door for the rebuttal testimony of Sheriff Noble who asserted that Lawson stated on the night of the incident that he did not actually see the shooting. There was no error in the admission of Sheriff Noble's rebuttal testimony.
IV. Was the verdict of the jury against the overwhelming weight of the evidence?
In Sadler v. State, 407 So.2d 95 (Miss. 1981), this Court stated:
Among the alleged errors assigned is that the trial court should have sustained Sadler's motion for a new trial on the ground that the jury verdict was not supported by sufficient credible evidence.
Considering the evidence, as we must, in the light most favorable to the state and accepting as true the evidence supporting or tending to support the verdict, with all inferences supportive of the verdict that reasonably may be drawn therefrom, we find no merit in this contention. Glass v. State, 278 So.2d 384 (Miss. 1973). In Spikes v. State, 302 So.2d 250 (Miss. 1974), this Court said:
On appeal, in this situation, in passing upon the sufficiency of evidence to support a verdict, this Court must accept as true the evidence which supports the verdict. Murphree v. State, 228 So.2d 599 (Miss. 1969). [302 So.2d at 251].
The resolution of such conflicts as there were in the evidence in this case, was peculiarly for the jury. In Hankins v. State, 288 So.2d 866 (Miss. 1974), it was said:
In Evans v. State, 159 Miss. 561, 132 So. 563 (1931), we stated:
We invite the attention of the bar to the fact that we do not reverse criminal cases where there is a straight issue of fact, or a conflict in the facts; juries are impaneled for the very purpose of passing upon such questions of disputed fact, and we do not intend to invade the province and prerogative of the jury.
(159 Miss. at 566, 132 So. at 564)
We conclude there was ample evidence to support the verdict of the jury and we decline to intrude into the fact-finding office of the jury. [288 So.2d at 868].

*227 (407 So.2d at 97).
Viewing the evidence in this light, it was established that appellant argued with Carter over a girl, whereupon appellant shot Carter while Carter was unarmed and pouring a beer into a cup. Such evidence was clearly sufficient to support a verdict of manslaughter. While appellant presented a strong case of justifiable homicide, the resolution of such conflicts was for determination by the jury. The jury's verdict was amply supported by the evidence.
Finding no reversible error, this case is affirmed.
AFFIRMED.
PATTERSON, C.J., WALKER and BROOM, P.JJ., and ROY NOBLE LEE, BOWLING, HAWKINS, PRATHER and ROBERTSON, JJ., concur.
NOTES
[1] Other cases wherein amendments have been allowed to change the victim's surname are as follows: Evans v. State, 425 So.2d 1043 (Miss. 1983); Belina v. State, 228 Miss. 330, 87 So.2d 919 (1956); Graves v. State, 148 Miss. 62, 114 So. 123 (1927); and Miller v. State, 53 Miss. 403 (1876).